**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELAINE D. MALINOWSKI, KRISTAL MIZE, MICHELLE PETTIFORD, VANESSA HAYS, DANIEL ROBERT BRAWNER, ROWDY JAMES ALDRIDGE, JOSEPH TYLER HALEY, MARY LEA KIRBY, MICHAEL WRIGHT, ANTHONY HANNA, PATRICK CALHOUN, and, ANDRE ROSE, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION and JOHNSON & JOHNSON HEALTHCARE SYSTEMS, INC.,

Defendants.

Case No. 7:23-cv-08421-NSR

Hon. Nelson Stephen Román
Magistrate Judge Victoria Reznik

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 3

I. Plaintiffs Have ARTICLE III Standing to Bring Their Claims. ........ 3

A. Plaintiffs Adequately Allege Article III Injury-In-Fact. ........ 3

1. Disclosure of Personal Information ........ 4

2. Actual Misuse of Stolen Information and Imminent Risk of Future Harm ........ 6

a) Targeted Attack ........ 7

b) Misuse of Compromised Dataset ........ 9

c) Type of Information ........ 10

3. Mitigation Expenses ........ 12

B. Plaintiffs' Injuries Are Traceable to Defendants' Misconduct. ........ 14

II. Plaintiffs' claims are well-pled. ........ 15

A. Plaintiffs State a Claim for Negligence. ........ 15

1. Plaintiffs Have Adequately Alleged Causation ........ 15

2. Plaintiffs Have Adequately Alleged Injury Caused by Defendants. ........ 16

B. Plaintiffs State a Claim for Negligence Per Se. ........ 17

C. Plaintiffs State a Claim for Breach of Implied Contract against Janssen. ........ 18

D. Plaintiffs State a Claim for Breach of Third-Party Beneficiary Contract Against IBM. ........ 19

E. Plaintiffs State a Claim for Breach of Fiduciary Duty. ........ 20

F. Plaintiffs State a Claim for Unjust Enrichment. ........ 23

G. Plaintiffs' State Consumer Protection Act Claims Are Well-Pled. .................................. 24

1. Plaintiff Wright and the Illinois Subclass State a Claim under the Illinois Consumer Fraud Act (ICFA). ........................................................................................ 24

2. Plaintiff Rose and the California Subclass State a Claim under the California Consumer Privacy Act (CCPA)........................................................................ 25

3. Plaintiff Rose and the California Subclass State a Claim under the California Confidentiality of Medical Information Act (CMIA). ................................................. 28

a) Defendants are subject to the CMIA........................................................................ 28

b) Plaintiffs allege Defendants affirmatively shared their Personal Information.......... 30

c) Plaintiffs allege unauthorize persons viewed their medical information................. 31

4. Plaintiff Rose and the California Subclass State a Claim under the California Unfair Competition Act (UCL). ........................................................................... 33

a) Plaintiffs allege standing under the UCL................................................................ 33

b) Plaintiffs allege all UCL elements with reasonable particularity............................ 33

c) Plaintiffs are entitled to restitution or injunctive relief........................................... 35

CONCLUSION................................................................................................................ 35

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Abercrombie v. Andrew College*,
438 F. Supp. 2d 243 (S.D.N.Y. 2006) .......... 23

*Allen v. Wenco Mgmt. LLC*,
696 F. Supp. 3d 432 (N.D. Ohio 2023) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 30

*Beaton v. SpeedyPC Software*,
666 F. Supp. 3d 724 (N.D. Ill. 2023) .......... 24

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .......... 7, 9

*Bohnak v. Marsh & McLennan Cos., Inc.*,
79 F.4th 276 (2d. Cir. 2023) .......... passim

*Brady v. Bayer Corp.*,
26 Cal.App.5th 1156 (2018) .......... 34

*Briggs v. N. Highland Co.*,
2024 WL 519722 (N.D. Ga. Feb. 9, 2024) .......... 16

*Brod v. Sioux Honey Ass'n*,
927 F. Supp. 2d 811(N.D. Cal. 2013) .......... 34

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......... 14, 15

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal.4th 163 (1999) .......... 33, 34

*Daly v. Metro. Life Ins. Co.*,
782 N.Y.S.2d 530 (Sup. Ct. 2004) .......... 21

*Del E. Webb Corp. v. Structural Materials Co.*,
123 Cal.App.3d 593 (1981) .......... 32

*Denney v. Deutsche Bank*,
443 F.3d 253 (2d Cir. 2006) .......... 13

*Doe v. Cmty. Health Plan-Kaiser Corp.*,
1999 WL 624551 (N.Y. Sup. Ct. Apr. 12, 1999) .............................................................. 21

*Dormitory Auth. v. Samson Constr. Co.*,
30 N.Y.3d 704, 94 N.E.3d 456 (2018) ................................................................................ 20

*Durell v. Sharp Healthcare*,
183 Cal.App.4th (2010) ....................................................................................................... 33

*Falk v. GMC*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) .............................................................................. 35

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ......................................................................... 15, 16

*Fero v. Excellus Health Plan, Inc.*,
304 F. Supp. 3d 333 (W.D.N.Y. 2018), order clarified, 502 F. Supp. 3d 724 (W.D.N.Y. 2020)
.....................................................................................................................................11, 12

*Florence v. Ord. Express, Inc.*,
674 F. Supp. 3d 472 (N.D. Ill. 2023) .................................................................................. 27

*Freedom Holding, Inc. v. Haart*,
72 N.Y.S.3d 873 (N.Y. Sup. Ct. 2022) ................................................................................ 23

*Fung-Schwartz v. Cerner Corp.*,
2018 WL 4386087 (S.D.N.Y. Sept. 13, 2018) .................................................................... 17

*Fung-Schwartz v. Cerner Corp.*,
2019 WL 4393022 (S.D.N.Y. Sept. 13, 2019) .................................................................... 17

*Hall v. Time, Inc.*,
158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008), as modified (Jan. 28, 2008) .................. 33

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*,
665 F. Supp. 2d 239 (S.D.N.Y. 2009) ................................................................................. 23

*IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*,
40 N.Y.3d 277 (2023).......................................................................................................... 22

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)................................................................................ 32

*In re Anthem Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................................. 34

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 26

*In re Canon U.S.A. Data Breach Litig.*,
2022 WL 22248656 (E.D.N.Y. Mar. 15, 2022) .......... 15, 19

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) .......... 17, 18

*In re Eureka Casino Breach Litig.*,
No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024) .......... 27

*In re GE/CBPS Data Breach Litig.*,
2021 WL 3406374 n.2 (S.D.N.Y. Aug. 4, 2021) .......... 14, 18, 20

*In re GEICO Customer Data Breach Litig.*,
691 F. Supp. 3d 624 (E.D.N.Y. 2023) .......... 16

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) .......... 7, 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 11, 12

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
198 F. Supp. (D. Or. 2016) .......... 22

*In re Progressive Leasing Breach Litig.*,
No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744 (D. Utah Jan. 16, 2025) .......... 27

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .......... 32, 34

*In re Unite Here Data Sec. Incident Litig.*,
740 F. Supp. 3d 364 (S.D.N.Y. 2024) .......... 8, 14

*In re USAA Data Sec. Litig.*,
621 F. Supp. 3d 454 (S.D.N.Y. 2022) .......... 13, 14, 15

*In re WasteManagement Data Breach Litigation*,
2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) .......... 22

*J.B. v. Monroe-Woodbury Cent. Sch. Dist.*,
206 N.Y.S.3d 98 (N.Y. App. Div. 2024) .......... 16

*J.M. v. Illuminate Educ., Inc.*,
103 Cal. App. 5th 1125 (2024) ........ 26

*Johnson v. Nice Pak Prods., Inc.*,
2024 WL 2845928 (S.D. Ind. June 5, 2024) ........ 16

*Jones v. Com. Bancorp, Inc.*,
2006 WL 1409492 (S.D.N.Y. May 23, 2006) ........ 21

*JPMorgan Chase Bank, N.A. v. Maurer*,
2015 WL 539494 (S.D.N.Y. Feb. 10, 2015) ........ 23

*Kirsten v. California Pizza Kitchen, Inc.*,
No. 221CV09578DOCKES, 2022 WL 16894503 (C.D. Cal. July 29, 2022) ........ 26

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*,
257 F. Supp. 3d 348 (S.D.N.Y. 2017) ........ 16

*Kroeck v. UKG, Inc.*,
2022 WL 4367348 (W.D. Pa. Sept. 21, 2022) ........ 20

*Kwikset Corp. v. Super. Ct.*,
(2011) 51 Cal.4th 310 ........ 33

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ........ 35

*MacDonald v. Clinger*,
84 A.D.2d 482 (4th Dept.1982) ........ 21

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) ........ 13, 14

*McDonald v. Coldwell Banker*,
543 F.3d 498 (9th Cir. 2008) ........ 34

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021) ........ passim

*Miller v. Syracuse Univ.*,
662 F. Supp. 3d 338 (N.D.N.Y. 2023) ........ 5, 18

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ........ 33

*Morrison v. Nat'l Australia Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008) ........................................................................................ 3

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
14 F. Supp. 3d 191 (S.D.N.Y. 2014) ........................................................................... 23

*Oddei v. ScanSTAT Techs., LLC*,
2022 WL 17538747 (9th Cir. Dec. 8, 2022) ................................................................ 30

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
No. 22-CV-08217-RFL, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ....................... 26

*People v. Casa Blanca Convalescent Homes, Inc.*,
159 Cal. App. 3d 509, 206 Cal. Rptr. 164 (Ct. App. 1984) abrogated by Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 973 P.2d 527 (1999) ........................................................................................................ 34

*Prickett v. New York Life Ins. Co.*,
896 F. Supp. 2d 236 (S.D.N.Y. 2012) ......................................................................... 22

*Regents of Univ. of Cal. v. Super. Ct.*,
220 Cal. App. 4th 549, 163 Cal. Rptr. 3d 205 (2013), as modified on denial of reh'g (Nov. 13, 2013) .......................................................................................................... 28, 30, 31

*Resnick v. Avmed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .................................................................................... 14

*Roni LLC v. Arfa*,
18 N.Y.3d 846, 963 N.E.2d 123 (2011) ................................................................. 20, 23

*Rubin v. Green*,
4 CAL. 4TH 1187, 847 P.2D 1044 (1993)...................................................................... 33

*Rudolph v. Hudson's Bay Co.*,
2019 WL 2023713 (S.D.N.Y. May 7, 2019) ................................................................ 24

*Sackin v. TransPerfect Glob., Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017) ............................................................... 8, 18, 24

*Sampaio v. Atl.-Heydt, LLC*,
294 F. Supp. 2d 466 (S.D.N.Y. 2003) ......................................................................... 17

*Saul v. Cahan*,
61 N.Y.S.3d 265 (N.Y. App. Div. 2017)....................................................................... 22

*Jordan v. Paul Fin., LLC* ,
745 F. SUPP. 2D 1084 (N.D. Cal. 2010) ........................................ 34

*Sgouros v. Transunion Corp.*,
Case No. 14 C 1850, 2016 WL 4398032 (N.D. Ill. Aug. 18, 2016)........................................ 25

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................ 20, 32

*Sutter Health v. Super. Ct.*,
227 Cal. App. 4th 1546, 174 Cal. Rptr. 3d 653 (2014) ........................................ 30, 31

*Thermal Imaging, Inc. v. Sandgrain Sec. Inc.*,
158 F. Supp. 2d 335 (S.D.N.Y. 2001) ........................................ 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................ 4, 5, 13

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*,
549 F.3d 100 (2d Cir. 2008) ........................................ 3

*Wallace v. Health Quest Sys., Inc.*,
2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ........................................ 3, 19, 21, 24

*Webb v. Injured Workers Pharm., LLC*,
72 F.4th 365 (1st Cir. 2023) ........................................10, 11

*Wolfson v. Glass*,
754 N.Y.S.2d 82 (3d Dep't 2003) ........................................ 17

**Statutes**

42 U.S.C. § 17937(a) ........................................ 6

45 U.S.C. § 1320d-6 ........................................11

815 Ill. Comp. Stat. Ann. 530/5 ........................................ 25

Cal. Bus. & Prof. Code § 17200 ........................................ 33

Cal. Civ. Code § 56.05(i) ........................................ 29

Cal. Civ. Code § 56.06(b) ........................................ 28, 29, 30

Cal. Civ. Code § 56.06(d) ........................................ 29

Cal. Civ. Code § 56.10 .......... 30

Cal. Civ. Code § 56.10(d) .......... 29

Cal. Civ. Code § 1798.81.5 .......... 26

Cal. Civ. Code § 1798.81.5 (d)(1)(A)(iv)-(v) .......... 25

Cal. Civ. Code § 1798.150(a)(1) .......... 25

Cal. Civ. Code § 1798.150(a)(1)(A) .......... 27

Cal. Civ. Code § 1798.150(b) .......... 27

Cal. Civ. Code § 1798.150(b)(1) .......... 27

**Regulations**

45 C.F.R. § 164.508 .......... 11

## INTRODUCTION

Plaintiffs, filed an Amended Consolidated Class Action Complaint [ECF No. 61] (**"**Amended Complaint**"** or "Am. Compl.") due to Defendants' actions and omissions that foreseeably resulted in a wholly preventable attack on their confidential personally identifiable information ("PII") and protected health information ("PHI") of which Defendants took possession in furtherance of their businesses. Plaintiffs must now live with the fact that criminals targeted and acquired their personal information for the remainder of their lives, Defendants deny any responsibility for the breach of their computer systems (the "Data Breach") and insist Plaintiffs and the hundreds of thousands of other victims of the Data Breach have not suffered any injuries. But this is contrary to Second Circuit and state case law. In this increasingly digital economy, Plaintiffs are entitled, by statute and common law, to expect that the recipients of their confidential data will take sufficient steps to ensure that it remains confidential. This is especially true of healthcare providers and their contracting partners like Defendants. As a result, not only have all Plaintiffs' privacy rights been violated and all Plaintiffs are now at risk of identity theft and fraud for their lifetimes, but various Plaintiffs have *already* suffered actual identity theft and fraud as a result of Defendants' failure to prevent the Data Breach. Defendant's Motion to Dismiss Plaintiffs' Amended Complaint ("Motion" or "Mot.") should be denied in its entirety.

## FACTUAL BACKGROUND

Defendant Johnson & Johnson Health Care Systems, Inc. owns and operates Janssen CarePath ("Janssen"), an Internet-accessible patient support program healthcare patients use to research, manage, and find financial assistance for their prescription medications. Am. Compl. ¶ 2. Janssen encourages healthcare patients to use the CarePath application to support their ongoing medical care. In 2022 approximately 1.2 million patients used the CarePath application. *Id.* Defendant International Business Machines Corporation ("IBM") is a multinational IT company

that manages the CarePath application and the third-party database on behalf of Janssen. *Id.* ¶ 3.

Plaintiffs are patients of healthcare entities and used the CarePath application to manage their prescription medication as part of their ongoing medical treatment from their primary care providers. *Id*. ¶¶ 162-63, 174-75, 186-87, 198-99, 210-11, 222-23, 234-35, 246-47, 258-59, 270-71, 282-83, 294-95. To use the application, Plaintiffs were required to provide confidential information including their names, contact information, and dates of birth, as well as personal health information consisting of health insurance information and information about medications and medical conditions (collectively "Personal Information"). *Id.* ¶ 33. Plaintiffs each value the confidentiality of their Personal Information and would not have entrusted their Personal Information to Defendants absent the understanding that Defendants would implement adequate data security to protect it. *Id.* ¶ 38.

On August 2, 2023, IBM discovered the CarePath network was breached by unauthorized threat actors and the unencrypted sensitive personal and protected health information stored within was accessed. *Id.* ¶¶ 43, 46. Following their discovery of the Data Breach, Defendants informed Plaintiffs and approximately 631,000 other victims of the Data Breach that their Personal Information had been compromised and they should take steps to detect or prevent identity theft and fraud. *Id.* ¶¶ 7-8. Unfortunately for many Plaintiffs, this warning came too late as following the Data Breach, attackers had already published their Personal Information on the dark web (*id.* ¶¶ 181, 253, 265, 289). Additionally, Plaintiffs experienced increased spam and phishing attempts (*id.* ¶¶ 169, 181, 205, 217, 241, 253, 265, 277, 289) and they have been victims of fraudulent charges and unauthorized access to their accounts (*id.* ¶¶ 229, 265, 289). Now, because of the Data Breach and the exposure of their Personal Information to criminals, Plaintiffs must guard against the present and continuing threat of identity theft for the remainder of their lives. *Id.* ¶¶ 113-40.

As set forth below, Plaintiffs' Amended Complaint establishes that Plaintiffs have Article III standing under the case law of this Circuit. Plaintiffs' plausibly plead both injury-in-fact and traceability, where their numerous injuries were caused by Defendants' acts and omissions. In addition, Plaintiffs sufficiently state each of their state law claims.

**ARGUMENT**

**I. PLAINTIFFS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS.**

Defendants challenge Plaintiffs' standing by misconstruing the well-pled allegations set forth in the Amended Complaint and downplaying the dangerous realities of data breaches in an age where disparate pieces of information are easily and commonly used by bad actors to victimize individuals whose Personal Information is exposed. *See, e.g.,* Mot. at 2, 7-10. Defendants' legal arguments are also contrary to binding Second Circuit precedent and improperly seek a premature ruling on the merits of the case. At this stage, however, the allegations set forth in the Amended Complaint must be accepted as true. *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 283 (2d. Cir. 2023) (explaining that where, as here, "standing is challenged on the basis of the pleadings, [the court must] accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party.") (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*, 549 F.3d 100, 106 (2d Cir. 2008)); *see also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). Plaintiffs' allegations of actual and future impending injuries flowing directly from the Data Breach are more than sufficient to confer Article III standing here.

**A. Plaintiffs Adequately Allege Article III Injury-In-Fact.**

Article III injury in fact is "a low threshold which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *5 (S.D.N.Y. Mar. 23, 2021). An injury confers standing simply by being an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent[.]"

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Here, Plaintiffs met this burden because they adequately allege: (1) unauthorized access and disclosure of their Personal Information; (2) actual, imminent and substantial risk of current and future identity theft and fraud; and (3) other concrete harms resulting from the Data Breach, including mitigation expenses, lost time, and emotional damages. Each of these injuries is sufficient, standing alone, to confer Article III standing, but taken as a whole—as they must be at this stage of the litigation—Plaintiffs' standing is unassailable.

**1. Disclosure of Personal Information**

Defendants cannot seriously dispute that an unauthorized third-party accessed the Personal Information of Plaintiffs and putative class members. Indeed, prior to the commencement of this litigation, Defendants readily admitted this fact when they sent Plaintiffs and class members a notice that their Personal Information was compromised by an unauthorized third-party and advised Plaintiffs and putative class members to take immediately protective measures to mitigate the likelihood of resulting identity theft and fraud. *See* Am. Compl. ¶¶ 7, 43, 113-14, 166-67, 178-79, 190-91, 202-03, 214-15, 226-27, 238-39, 250-51, 262-63, 274-75, 286-87, 298-99. Specifically, in the Notice Letter, Defendants informed Plaintiffs and 631,000 putative class members that the Data Breach "involv[ed] *unauthorized access to personal information* contained within a database used on the Janssen CarePath platform[.]" *Id.* ¶ 7 (emphasis added). Defendants further explained in the Notice Letter that "IBM's investigation identified, on August 2, 2023, that *there was unauthorized access to personal information in the database*[.]" *Id.* (emphasis added).

The admitted unauthorized disclosure of Plaintiffs' Personal Information is a concrete injury sufficient to confer Article III standing here. *See Bohnak*, 79 F.4th at 286 (explaining that the "exposure of [] private information . . . to an unauthorized malevolent actor[,]" in itself, "falls

squarely within the scope of an intangible harm the Supreme Court has recognized as 'concrete' [for Article III purposes].) (quoting *TransUnion*, 594 U.S. at 425). As the Supreme Court explained in *TransUnion*, "disclosure of private information" is a prime example of the type of concrete, intangible harm "traditionally recognized as providing a basis for lawsuits in American courts." 594 U.S. at 425. The Second Circuit has consistently applied *TransUnion* in the data breach context. *Bohnak*, 79 F.4th at 286 (quoting *TransUnion*, 594 U.S. at 425); *see also Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 353 (N.D.N.Y. 2023). Here, all Plaintiffs allege their Personal Information was disclosed without authorization via the Data Breach as Defendants told them in the notice. *See* Am. Compl. ¶¶ 37-38. As a result, each Plaintiff has adequately alleged that they have experienced a constitutionally sufficient injury. *See Bohnak*, 79 F.4th at 286.

Defendants' assertions to the contrary are unavailing. First, Defendants seek to use their lack of transparency with the public and Plaintiffs in this litigation as both a sword and shield. For example, Defendants argue that when they told Plaintiffs and putative class members "there was unauthorized access to personal information in the database," Am. Compl. ¶¶ 7, 43, 113-14, 166-67, 178-79, 190-91, 202-03, 214-15, 226-27, 238-39, 250-51, 262-63, 274-75, 286-87, 298-99, that is not what Defendants *actually* meant. Defendants suggest to this Court that all they told Plaintiffs and putative class members about the unauthorized disclosure of Personal Information in the Data Breach was that "'unauthorized access to the database *could* be obtained' not '*was* obtained.'" Mot. at 13 (emphasis in original). This argument is specious.

In the next paragraph of the Notice Letter sent to Plaintiffs and putative class members Defendants explained that, once they learned the database "*could be*" accessed and information obtained by an unauthorized third-party, they conducted an investigation to determine whether, in fact, the database *had* been accessed and information obtained by an unauthorized third-party and

Defendants' own investigation determined definitively that the database was, in fact, accessed and Personal Information was obtained from the database by an unauthorized third-party. *See* Notice Letter. Defendants' own investigation took the Data Breach out of the realm of the theoretical "could" and Defendants made it expressly clear to Plaintiffs and putative class members that "*there was unauthorized access to personal information in the database*." ¶ 7 (emphasis added).

Second, despite the plain meaning of these words, Defendants next argue that, to comply with the Federal Trade Commission's ("FTC") Notification Rule, Defendants were "forced" to use these words, which somehow misrepresented what actually occurred in the Data Breach. Mot. at 14-15. Even if this were true, it cannot form the basis of a Motion to Dismiss. Moreover, the FTC's Notification Rule did not require Defendants to lie. As Defendants acknowledge, the FTC's Notification Rule only required Defendants to act in circumstances where they knew the data in their possession had been "*acquired by an unauthorized person*" and did not require Defendants to act under any other circumstance that is relevant here. *Id.* at 14 (emphasis added) (citing and quoting 42 U.S.C. § 17937(a)) which states: "(1) notify each individual who is a citizen or resident of the United States whose unsecured PHR identifiable health information *was acquired by an unauthorized person* as a result of such a breach of security . . ."). Thus, the Notification Rule did not require Defendant to act based on unconfirmed speculation about the exposure of Personal Information or to misrepresent facts. Any further argument about the meaning of their letter and what actually occurred should be the subject of discovery after the Motion to Dismiss is denied.

**2. Actual Misuse of Stolen Information and Imminent Risk of Future Harm**

Plaintiffs also credibly allege that they have suffered identity theft and fraud as a result of the Data Breach and also allege that there is a real and substantial risk of the same harms occurring to Plaintiffs and putative class members in the future. These allegations are also sufficient to

constitute an injury in fact. Second Circuit courts consider three factors to determine whether the risk of identity theft or fraud following a data breach is sufficiently imminent to confer Article III standing: (1) whether the data was exposed in a targeted attack; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that it subjects plaintiffs to a perpetual risk of identity theft or fraud once it has been exposed. *See, e.g., McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021); *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *5 (E.D.N.Y. July 21, 2023). Each of these three factors weighs in favor of standing here.

**a) Targeted Attack**

As the Second Circuit has explained, "the most important factor in determining whether a plaintiff whose PII has been exposed has alleged an injury in fact is whether the data was compromised as the result of a targeted attack intended to get PII." *Bohnak*, 79 F.4th at 288. The hallmark of a "targeted attack" is the desire to intentionally seek the PII and is distinguishable from an unauthorized third-party inadvertently stumbling upon sensitive data with no explicit intent to obtain Personal Information where, for example, a criminal steals a laptop from an individual's residence. *Compare Bohnak*, 79 F.4th at 287-89, *with Beck v. McDonald*, 848 F.3d 262, 274-75 (4th Cir. 2017).

Here, Plaintiffs allege—and Defendants cannot reasonably dispute—that their Personal Information was accessed and stolen by an unauthorized third-party in a targeted attack that was not aimed at stealing Defendants' physical servers but, instead, was targeted at stealing the Personal Information stored on Defendants' servers. *See* Am. Compl. ¶¶ 9, 44, 46. When the stolen data includes the type of Personal Information stolen here, "it is reasonable to infer the purpose of

the attack was to misuse the data." *In re Unite Here Data Sec. Incident Litig.,* 740 F. Supp. 3d 364, 374 (S.D.N.Y. 2024) ("Because healthcare and personally identifiable information are especially attractive and vulnerable to cyberattacks, the data breach qualifies as 'a targeted attempt to obtain that data.'"); *see also Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017).

Ignoring Plaintiffs' well-pled allegations and binding Second Circuit precedent, Defendant resorts again to a circular, nonsensical, and factually untrue argument that asserts that the Notice Letter only informed Plaintiffs and putative class members "the Incident was the result of "a technical method by which unauthorized access to the database *could* be obtained,' not '*was* obtained,'" thus, Plaintiffs have failed to demonstrate the Data Breach was a targeted attack. Mot. at 13. Defendants fail to acknowledge Plaintiffs' allegations that the Notice Letter in the very next paragraph made it evident this was a targeted attack when Defendants told Plaintiffs and putative class members "there ***was*** unauthorized access to personal information in the database." Am. Compl. ¶¶ 7, 43, 113-14, 166-67, 178-79, 190-91, 202-03, 214-15, 226-27, 238-39, 250-51, 262-63, 274-75, 286-87, 298-99 (emphasis added).

Additionally, whether the unauthorized third-party accessed and obtained Plaintiffs' and putative class members' Personal Information in the Data Breach via a "technical method" defect in Defendants' data security or any other data security failure is irrelevant to the fact that unauthorized access occurred as a direct result of Defendants' data security failures. As the Second Circuit has recognized in finding standing: "[t]his was not an inadvertent, intra-company disclosure; it was a targeted hack." *Bohnak*, 79 F.4th at 289. Defendants have failed to explain why the fact their investigation revealed the unauthorized access and Data Breach attack was made possible via a "technical method" impacts Plaintiffs' allegations or standing.

The intent of the unauthorized third-party who obtained the Personal Information in the

Data Breach is readily inferred here because the present case involves a cyber attack that went undetected by Defendants and exploited a specific technical vulnerability known to Defendants to access and obtain Plaintiffs' and putative class members' Personal Information. Am. Compl. ¶¶ 7, 43, 113-14, 166-67, 178-79, 190-91, 202-03, 214-15, 226-27, 238-39, 250-51, 262-63, 274-75, 286-87, 298-99; *see also* Notice Letter. Other than the Personal Information, Defendants have identified nothing else that the unauthorized third-party accessed and obtained from Defendants' networks, which further underscores the intent and purpose of the Data Breach.

Plaintiffs' allegations that an unauthorized third-party specifically targeted Plaintiffs' and putative class members' Personal Information in the Data Breach satisfies the first *McMorris* commonality for pleading injury based upon sufficiently imminent harm.

**b) Misuse of Compromised Dataset**

The allegations set forth by Plaintiffs in the Amended Complaint are replete with specific examples of actual and attempted misuse of Plaintiffs' Personal Information after it was stolen in the Data Breach. *See, e.g., id.* ¶¶ 229, 241, 265, 289 (detailing unauthorized charges on payment cards and bank accounts); 169, 229 (detailing fraudulent attempts to open accounts and take out loans); 119-20, 265, 289 (detailing threatening email messages concerning the release of medical information); 112, 121, 125-27, 181, 253, 265, 289 (detailing alerts that stolen Personal Information has been published for sale on the Dark Web).

These are not mere imminent "threats" of harm. Rather, Plaintiffs' allegations concerning the actual misuse of their Personal Information that has already occurred as a result of the Data Breach "push the threatened injury of future identity theft [for all Plaintiffs] beyond the speculative to the sufficiently imminent." *Beck*, 848 F.3d at 274; *see also Bohnak*, 79 F.4th at 287 ("For example, fraudulent charges to the credit cards of other customers impacted by the same data

breach, *or evidence that a plaintiff's PII is available for sale on the Dark Web*, can support a finding that a plaintiff is at a substantial risk of identity theft or fraud.") (emphasis added). Where, as here, "at least some information stolen in a data breach has already been misused," it is "likely that other portions of the stolen data set will be similarly misused." *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 376 (1st Cir. 2023).

Collectively, Plaintiffs' allegations plausibly allege that each person whose Personal Information was compromised and stolen as a result of the Data Breach faces an equally shared risk of imminent and substantial future harm. The Second Circuit has expressly held that plaintiffs may establish Article III standing based on a *risk* of future harm where, as here, "some part of the compromised dataset has been misused—*even if a plaintiff's own data has not*." *Bohnak*, 79 F.4th at 288 (emphasis added). "Indeed, requiring plaintiffs to allege that they have already suffered identity theft or fraud as the result of a data breach would seem to run afoul of the Supreme Court's recognition that '[a]n allegation of future injury may suffice' to establish Article III standing 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *McMorris*, 995 F.3d at 300; *Bohnak*, 79 F.4th at 287-89 (finding allegations of future harm were sufficient to confer standing even where plaintiff "ha[d] not alleged any known misuse of information in the dataset accessed in the hack").

Plaintiffs have more than established what the Second Circuit requires because they have specifically alleged that Personal Information was all stored on Defendants' inadequately secured network and have alleged that all of the Personal Information was stolen in the same Data Breach, by the same unauthorized third-party, for the same criminal purpose. Am. Compl. ¶¶ 1-13, 43-47.

**c) Type of Information**

In the face of these realities, Defendants try to downplay the significance and relevance of

the Personal Information and spend much of their Motion attempting to argue the merits. Mot. at 13-16. But, as set forth in the Notice Letter, the data stolen in this Data Breach includes highly sensitive "health insurance information, and information about medications and associated conditions, " as well as patients' contact information and dates of birth. Am. Compl. ¶ 43. Significantly, Plaintiffs' and putative class members' health insurance information, information concerning what medications Plaintiffs and putative class members are prescribed, and information about the medical conditions for which Plaintiffs and putative class members are prescribed medications are all decidedly *not* publicly available information. Thus, the highly sensitive nature of the Personal Information in the Data Breach here demonstrates Plaintiffs' Article III standing because "the risk of future misuse [is] heightened where the compromised data is particularly sensitive." *Webb*, 72 F.4th at 376; *Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333, 345 (W.D.N.Y. 2018) (finding in a data breach case that "personally identifying information, such as a social security number *or date of birth*, as alleged in the CMC, is sufficient to establish standing.") (emphasis added); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792, 800-01 (N.D. Cal. 2022) (concluding that "patient status is protected health information" and explaining that "[b]y enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information.") (citing 45 U.S.C. § 1320d-6 (providing criminal and civil penalties for disclosing protected health information without authorization); 45 C.F.R. § 164.508 (requiring a "valid authorization" for use or disclosure of protected health information)). Given the highly sensitive nature of the Personal Information stolen in the Data Breach, Plaintiffs have established Article III standing here.

Defendants seek to avoid this conclusion by manufacturing a standard that Personal

Information is not valuable and is not highly sensitive unless it includes the victims' Social Security Number. Mot. at 15-16. No such standard exists. Indeed, courts around the country have regularly determined that precisely the type of Personal Information at issue here is highly sensitive and confers Article III standing. *See, e.g., McMorris*, 995 F.3d at 302 (finding the disclosure of a date of birth *or* a Social Security Number constitutes highly sensitive information); *Fero*, 304 F. Supp. 3d at 345 (same); *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 800-01.

Moreover, Defendants' arguments concerning the significance of the Personal Information stolen in the Data Breach here wholly ignores Plaintiffs' well-pled allegations concerning how criminals build and put to use "Fullz" packages, *see* Am. Compl. ¶¶ 133-40, by easily piecing together comprehensive dossiers on victims that only require "cross-referenc[ing] *two sources of Personal Information* to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy . . ." *Id.* ¶ 134. Plaintiffs explicitly allege that "even if certain information (such as Social Security numbers or payment card numbers) was not stolen in the Data Breach, criminals can still easily create a comprehensive 'Fullz' package." *Id.* ¶ 137. The Amended Complaint further details precisely how the Fullz package process was used by bad actors to commit credit card fraud against Plaintiffs Wright and Calhoun even though financial information was not stolen in the Data Breach. *Id.* ¶¶ 139-40.

**3. Mitigation Expenses**

In the Notice Letter, Defendants "encouraged [Plaintiffs and putative class members] to remain vigilant by regularly reviewing their account statements and explanations of benefits from their health insurer or care providers with respect to any unauthorized activity, and to promptly report any suspicious activity." *Id.* ¶ 142, 167, 179, 191, 203, 215, 227, 239, 251, 263, 275, 287, 299. Despite explicitly encouraging Plaintiffs and putative class members to take steps to protect

themselves as a result of the Data Breach, Defendants now argue to this Court that the risk to Plaintiffs and class members Defendants "encouraged" them to mitigate against are not sufficiently imminent to constitute a cognizable injury. Mot. at 17.

Plaintiffs' allegations of mitigation expenses incurred, lost time, and emotional damages represent separate, present harms that result from the Data Breach. *See TransUnion*, 594 U.S. at 435-37; *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021). Because Plaintiffs adequately allege present identity theft and fraud as well as a substantial risk of future identity theft and fraud, the time and expenses they have reasonably incurred to mitigate that risk itself constitutes Article III injury in fact. *See, e.g., McMorris*, 995 F.3d at 303; *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 464 (S.D.N.Y. 2022). Here, all Plaintiffs have spent significant time protecting themselves against present harm and the risk of future harm, including time spent researching the Data Breach and monitoring credit reports and financial accounts for unauthorized activity. *See* Am. Compl. ¶¶ 167, 179, 191, 203, 215, 227, 239, 251, 263, 275, 287, 299.

In addition to mitigation harms, all Plaintiffs here also allege emotional damages as a result of the Data Breach. *Id.* ¶¶ 170, 182, 194, 206, 218, 230, 242, 254, 266, 278, 290, 301. In *TransUnion*, the Supreme Court recognized that "[a] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." 594 U.S. at 436 n.7. "Following *TransUnion*, courts across the country have recognized that harms that result as a consequence of a plaintiff's knowledge of a substantial risk of identity theft, including . . . emotion[al] distress can satisfy concreteness." *Medoff v. Minka Lighting, LLC*, 2023 WL fer, at *4 (C.D. Cal. May 8, 2023) (collecting cases); *Denney v. Deutsche Bank*, 443 F.3d 253, 264-65 (2d Cir. 2006). Because the risk of future harm alleged by Plaintiffs is not speculative, the emotional damage they suffered as a result of the Data

Breach are also Article III injuries in fact. *See In re USAA*, 621 F. Supp. 3d at 466.

**B. Plaintiffs' Injuries Are Traceable to Defendants' Misconduct.**

Plaintiffs sufficiently allege a causal connection between their alleged injuries and the Defendants' failure to secure and safeguard their Personal Information. At the pleading stage, Plaintiffs are not required to prove causation—they are required to *plausibly allege* causation. *See, e.g., In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *4 n.2 (S.D.N.Y. Aug. 4, 2021); *Maddox*, 19 F.4th at 58 (2d Cir. 2021) (Plaintiffs must show "a causal connection between that injury and the conduct at issue[.]"). Further, Article III traceability does not require defendants be the most immediate cause, or even a proximate cause, of plaintiffs' injuries. *See, e.g., Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55-56 (2d Cir. 2016); *In re Unite Here*, 740 F. Supp. 3d at 374-75. In the data breach context, a plaintiff need only allege a "sufficient nexus between the data breach" and their injuries. *Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1329-30 (11th Cir. 2012).

Here, Plaintiffs allege that Defendants' data security failures resulted in the unauthorized access and theft of Plaintiffs' Personal Information during the Data Breach. *See, e.g.*, Am. Compl. ¶¶ 1-13, 43-47. As Defendants implicitly recognized in their recommendations to victims in the Notice Letter, stolen Personal Information is regularly used to perpetrate identity theft and other forms of fraud. The very types of fraud and identity theft Defendants warned Plaintiffs and putative class members might result from the Data Breach has already occurred to some of the named Plaintiffs and putative class members.

Defendants' arguments to the contrary are all based on the same faulty premise concerning the purported significance of the Personal Information exposed in the Data Breach. But it is of no moment that highly sensitive data beyond credit card and financial information was exposed in this Data Breach. Further, the Second Circuit has clarified that conduct that causes injury "only

indirectly, after intervening conduct by another person" can satisfy Article III's causation standard. *See Carter*, 822 F.3d at 55-56. Plaintiffs are, thus, not required to allege Defendants' actions were the last step in the chain of causation. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 756 (W.D.N.Y. 2017), (finding plaintiffs "need not rule out alternative sources of their injuries").

Plaintiffs allege injuries arising from theft of their sensitive and confidential Personal Information that is not publicly available, including their "health insurance information, and information about medications and associated conditions." Am. Compl. ¶ 43. Plaintiffs' injuries are temporally and logically linked directly to the type of Personal Information stolen in the Data Breach. *See, e.g., id*. at ¶¶ 112, 119-21, 125-27, 169, 181, 229, 241, 253, 265, 289. Accordingly, Plaintiffs' allegations here are sufficient to meet Article III's traceability requirement. *See, e.g.*, *In re GEICO*, 2023 WL 4778646, at *6; *In re USAA*, 621 F. Supp. 3d at 465 n.3; *In re Canon U.S.A. Data Breach Litig*., 2022 WL 22248656, at *5 (E.D.N.Y. Mar. 15, 2022).

For the foregoing reasons, this Court should follow Second Circuit precedent and find that the Amended Complaint adequately alleges concrete and cognizable injuries flowing from Defendants' failures to protect Plaintiffs' and putative class members' Personal Information.

## II. PLAINTIFFS' CLAIMS ARE WELL-PLED.

### A. Plaintiffs State a Claim for Negligence.

Defendants' negligence argument contends that Plaintiffs failed to sufficiently allege causation and injury. *See* Mot. at 20-21. But Defendants' argument is premised on ignoring Plaintiffs' well-pled allegations set forth in the Amended Complaint.

#### 1. Plaintiffs Have Adequately Alleged Causation

Challenging causation, Defendants seek to avoid responsibility for this Data Breach by pointing fingers at other parties. Mot. at 19. But Defendants do not contest their own data security failures led to the Data Breach. *See id.* at 4. It is well-settled that the criminal action of a third-

party is not an intervening cause where the wrongdoing was "reasonably foreseeable" to a defendant as Plaintiffs allege here. *See. e.g., See Fero*, 236 F. Supp. 3d at 756; *J.B. v. Monroe-Woodbury Cent. Sch. Dist*., 206 N.Y.S.3d 98, 100 (N.Y. App. Div. 2024). Plaintiffs easily pass the reasonable foreseeability test. For example, the Amended Complaint details that Defendants knew they were likely targets of this exact type of breach. *See* Am. Compl. ¶¶ 62-64 (detailing staggering number of data breaches in 2023 alone, warnings to companies by FBI about rising prevalence of data breaches and listing over half dozen data breaches affecting healthcare companies).

Moreover, determining proximate cause is a fact-intensive endeavor, not appropriately made based solely on the pleadings in the context of a motion to dismiss. *See, e.g., In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624, 632 (E.D.N.Y. 2023) (collecting cases); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd*., 257 F. Supp. 3d 348, 357 (S.D.N.Y. 2017) (foreseeability "is a question of fact that cannot be resolved on a motion to dismiss.");.

**2. Plaintiffs Have Adequately Alleged Injury Caused by Defendants.**

Defendants' argument concerning negligence injury is a regurgitation of their standing injury-in-fact argument and fares no better here. Defendants ignore that the Amended Complaint alleges that Plaintiffs have already presently suffered injury as a result of the Data Breach. *See, e.g.,* Am. Compl. ¶¶ 112, 119–21, 125–27, 169, 181, 229, 241, 253, 265, 289. Thus, Plaintiffs here are not reliant on impending future harms to sustain their negligence claim.

As the Second Circuit has explained, if Plaintiffs have adequately alleged standing injury-in-fact, that alleged harm is sufficient to recover damages for purposes of Plaintiffs' negligence claim. *McMorris*, 995 F.3d at 289–90.[1] Here, Plaintiffs have alleged concrete injuries that include

[1] *See also Johnson v. Nice Pak Prods., Inc.*, 2024 WL 2845928, at *4 (S.D. Ind. June 5, 2024) (finding "no difference" between injury in fact for standing and compensable damages); *Briggs v. N. Highland Co.*, 2024 WL 519722, at *9 (N.D. Ga. Feb. 9, 2024) (upholding plaintiff's argument

the inherent lost value of their PII (which in some instances has been posted on the dark web already), fraud and identity theft that have already occurred, mitigation damages, and emotional damages. Each of the injuries alleged by Plaintiffs in the Amended Complaint arose contemporaneously with the Data Breach, which further serves to support the clear causal connection between the Data Breach and Plaintiffs' injuries. The nature and timing of these harms with the Data Breach satisfies the causation and injury prongs for Plaintiffs' negligence claims.

### B. Plaintiffs State a Claim for Negligence *Per Se*.

Defendants contend that Plaintiffs' negligence *per se* claim should be dismissed because it is reliant on HIPAA and the FTC Act, which do not have a private right of action. *See* Mot. at 20. But New York law allows violations of a statute to serve as the basis for establishing the standard of care applicable to a negligence per se claim, even where the underlying statute does not provide for a private right of action. *See Fung-Schwartz v. Cerner Corp.*, 2019 WL 4393022, at *10 (S.D.N.Y. Sept. 13, 2019) ("Under New York law, 'a statute or regulation may provide the Court with the relevant standard of care' for a negligence action." (quoting *Sampaio v. Atl.-Heydt, LLC*, 294 F. Supp. 2d 466, 469–70 (S.D.N.Y. 2003) (citing *Wolfson v. Glass,* 754 N.Y.S.2d 82, 83–84 (3d Dep't 2003)))); *see also In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407–08 (E.D. Va. 2020) ("[B]ecause New York law would permit the Plaintiffs to assert a negligence *per se* claim premised on a federal statute and because Plaintiffs have adequately done so here—importing the standard of care from the FTC Act—Plaintiffs have plausibly alleged a claim for negligence *per se* under New York law."); *Fung-Schwartz v. Cerner Corp.*, 2018 WL

---

that injuries sufficient for Article III standing are sufficient for damages for negligence claim); *Allen v. Wenco Mgmt. LLC*, 696 F. Supp. 3d 432, 437-38 (N.D. Ohio 2023) (injury sufficiently concrete for Article III standing also supports damages for negligence claim, citing *Bohnak*, 79 F.4th at 289–90.).

4386087, at *8 (S.D.N.Y. Sept. 13, 2018) (HIPAA may provide standard of care for negligence).

*In re Cap. One* is instructive. Because HIPAA and the FTC Act provide the applicable standard of care, Plaintiffs' negligence *per se* claim is well-pled.

**C. Plaintiffs State a Claim for Breach of Implied Contract against Janssen.**

Defendants challenge Plaintiffs' claim for breach of implied contract by erroneously insisting that Plaintiffs cannot demonstrate a meeting of the minds with Janssen regarding his obligation to protect confidential data. Mot. at 21. To the contrary, each Plaintiff alleges that he or she interacted directly with the CarePath application as part of their continuum of care and that, as a condition of using the platform, they were required to entrust their Personal Information to Janssen. Am. Compl. ¶¶ 162-63, 174-75, 186-87, 198-99, 210-11, 222-23, 234-35, 246-47, 258-59, 270-71, 282-83, 294-95. In short, Janssen required Plaintiffs and Class Members to provide their Personal Information "as a condition of receiving medical services from Janssen." Accordingly, a meeting of the minds is properly pleaded: in accepting patients' Personal Information, Janssen agreed to safeguard and protect it. *Id.* ¶¶ 365-66.

Defendants argue that Janssen "is not a medical care provider and does not provide medical services." Mot. at 21. That is a merits argument that has no weight on a motion to dismiss. Plaintiffs' allegations that defendant "required and obtained the PII" from plaintiffs "evince[s] an implicit promise by [defendant] to act reasonably to keep [plaintiffs'] PII safe[]" and establish implied contract. *Sackin v. TransPerfect Glob., Inc.,* 278 F. Supp. 3d 739, 750-51 (S.D.N.Y. 2017). Indeed, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Id.* (citation omitted). *In re GE/CBPS Data Breach Litig.,* 2021 WL 3406374, at *12; *Miller*, 662 F. Supp. 3d at 366.

Defendants next argue that "Plaintiffs allege they joined CarePath through their healthcare providers, not via Janssen." Mot. at 21. This is inaccurate. Plaintiffs plead that they used Janssen CarePath application as part of their continuum of care, and were required to provide Jannsen with their information. *See e.g.*, Am. Compl. ¶¶ 162-63.

Moreover, Plaintiffs have alleged that Janssen understood its obligation to protect the data that Plaintiffs entrusted to it as evidenced by its privacy policy. *Id.* ¶ 58 ("We seek to use reasonable organizational, technical, and administrative measures designed to protect personal information under our control."); *cf. Wallace*, 2021 WL 1109727, at *10 ("[T]he Notice of Privacy Practices, along with the notices defendant posted on its website, support an inference that Health Quest intended to be bound by its obligation to safeguard plaintiffs' Personal Information.").

And finally, "[t]he existence of 'an implied contract will ordinarily be a question of fact, as it involves an assessment of the parties' conduct and the extent to which such conduct demonstrates a meeting of the minds.'" *Wallace*, 2021 WL 1109727, at *10 (citation omitted). Here, Plaintiffs have alleged objectively reasonable facts supporting Defendant's obligation to safeguard their data and that is enough at the pleading stage.

### D. Plaintiffs State a Claim for Breach of Third-Party Beneficiary Contract Against IBM.

Defendants next argue Plaintiffs' third-party beneficiary claims against IBM are conclusory and that Plaintiffs have failed to allege the terms IBM breached. Mot. at 21. But, Plaintiffs clearly allege that a condition of IBM's receipt of their Personal Information from Janssen was the obligation to implement reasonable data security policies. Am. Compl. ¶¶ 36, 393-94, 396. Under New York law, when one actor (i.e., Janssen) provides a plaintiff's PII to a second actor (i.e., IBM) under a contract between the two actors, and the plaintiff was required to provide the PII to receive a benefit (i.e., Janssen's services), the plaintiff is a third-party beneficiary of the agreement. *See In*

*re Canon U.S.A.*, 2022 WL 22248656, at *11 (citing *In re GE/CBPS*, 2021 WL 3406374, at *12)).

Defendants rely on *Dormitory Authority of the State of New York v. Samson Constr. Co.*, to argue that Plaintiffs have failed to allege the existence of a third-party beneficiary contract, but fail to acknowledge that the opinion concerned a motion for summary judgment following discovery. 30 N.Y.3d 704, 710 (2018). Here, the question is not whether there is a genuine issue of disputed fact but whether Plaintiffs have pleaded the existence of the contract. *See Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 920 (S.D. Cal. 2020) ("without discovery, it is not clear what more Plaintiffs could plead, or what more Inmediata would need to be able to defend against Plaintiffs' claims that they are third party beneficiaries of Inmediata's contracts."); *Kroeck v. UKG, Inc.*, 2022 WL 4367348, at *5 (W.D. Pa. Sept. 21, 2022) (declining to dismiss third-party beneficiary contract claim where "the contract between Defendants and the hospital is not yet part of the record."). Moreover, *Dormitory Authority* turns on the difference between an intended beneficiary (one expressly contemplated by the provisions of the contract) and an incidental beneficiary (one who though uncontemplated by the contract happens to benefit from the performance of the contract). 30 N.Y.3d at 710. Here, Plaintiffs allege the contract between IBM and Janssen required IBM to implement safeguards to maintain the confidentiality of Plaintiffs' data collected through the CarePath application. Am. Compl. ¶¶ 393, 396. Accordingly, Plaintiffs allege they were the intended rather than incidental beneficiaries of the contracts.

### E. Plaintiffs State a Claim for Breach of Fiduciary Duty.

"A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Roni LLC v. Arfa*, 18 N.Y.3d 846, 848, (N.Y. App. 2011) (cleaned up). This is what Plaintiffs allege: they were "required to entrust Defendants with their sensitive, non-public Personal Information . . . in order to obtain medical services from

Defendants," and Defendants' "exclusive control" of that information gave rise to an imbalance of confidence. Am. Compl. ¶¶ 5, 384. Defendants' argument that they owed no fiduciary duty to Plaintiffs because their relationship with Plaintiffs is "attenuated," Mot. at 23, disregards that they obtained Plaintiffs' Personal Information in the course of providing healthcare treatment. *See* Am. Compl. ¶ 53 ("As a condition of obtaining medical services from Defendants, Defendants require Janssen's patients to entrust their sensitive and confidential Personal Information to Defendants."). Accordingly, Defendants owed fiduciary duties to keep Plaintiffs' Private Information confidential based on "the implied covenant of trust and confidence that is inherent in the physician-patient relationship." *See Wallace*, 2021 WL 1109727, at *12 (quotation and citation omitted). This duty extends beyond physicians to healthcare corporations performing ancillary functions for physicians, "because the cloak of confidentiality wraps around more than the health care professional who renders services"—such as Defendants here. *See id.*; *see also Doe v. Cmty. Health Plan-Kaiser Corp.*, 1999 WL 624551, at *3 (N.Y. Sup. Ct. Apr. 12, 1999) (citing *MacDonald v. Clinger*, 84 A.D.2d 482, 483 (4th Dept.1982)) (physician's fiduciary duty to keep patient's medical records confidential extends "by implication any handler of that information").

Moreover, even outside the healthcare context a corporation owes a fiduciary duty to keep information confidential when an individual "was required to provide certain information to [a defendant] to open her account, and [the defendant] represented that it would safeguard that information." *Jones v. Com. Bancorp, Inc.*, 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006); *see also Daly v. Metro. Life Ins. Co.*, 782 N.Y.S.2d 530, 535 (Sup. Ct. 2004) (when plaintiffs "were required to, and agreed to supply Met Life with highly sensitive personal information . . . [i]mplicit in this agreement was a covenant to safeguard the information"). That is what Plaintiffs allege here: they "were required to entrust Defendants with their sensitive, non-public Personal

Information . . . in order to obtain medical services from Defendants," namely, the use of Defendants' CarePath application. Am. Compl. ¶¶ 2, 5. Plaintiffs' entrustment of their sensitive data to Defendants thus gave rise to Defendants' fiduciary duty.

The cases Defendants cite do not support dismissing Plaintiffs' fiduciary duty claims. *Thermal Imaging, Inc. v. Sandgrain Sec. Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001) and *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 250 (S.D.N.Y. 2012) each alleged fiduciary duties to advise, not fiduciary duties to keep information confidential like Plaintiffs allege here.[2] *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 1183 (D. Or. 2016) is also distinguishable. There, Washington law governed the fiduciary duty claims, under which a fiduciary duty would arise when "'as a matter of law . . . the nature of the relationship between the parties is historically considered fiduciary in character.'" Defendants distort the finding in *Saul v. Cahan*, 61 N.Y.S.3d 265 (N.Y. App. Div. 2017). Rather than a failure to plead damages, the finding in that case resulted from a failure "to allege 'special circumstances' that transformed the alleged business relationship of the plaintiff and Cahan into a fiduciary one." *Id*. at 268. Finally, *IKB Int'l, S.A. v. Wells Fargo Bank*, N.A., 40 N.Y.3d 277 (2023) is distinguishable because there, the source of fiduciary duty was the contract itself, and hence tort and contract claims impermissibly overlapped. In contrast, here, fiduciary duty arises independently of the implied contract. In these circumstances, the claims are not duplicative: "claims for fiduciary duty, unjust enrichment, and breach of contract need not be dismissed as 'duplicative' on a motion to dismiss, especially where there is not necessarily a known complete overlap between the source of the fiduciary duty or

[2] *In re Waste Management Data Breach Litigation* is also inapposite because it involved employee-employer relationships, and the plaintiffs' claim was dismissed because "New York courts have consistently found that employers are not fiduciaries for their employees." 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022).

contract or other torts." *Freedom Holding, Inc. v. Haart*, 72 N.Y.S.3d 873, 888 (N.Y. Sup. Ct. 2022)

Further, the existence of fiduciary duty cannot be resolved on a motion to dismiss. Under New York law, whether a fiduciary duty exists depends on the nature of the parties' relationship, not whether that relationship is historically fiduciary as a matter of law. *See Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 207 (S.D.N.Y. 2014). Hence, "ascertaining the existence of a fiduciary relationship inevitably requires a fact-specific inquiry." *Id.*, at 208 (quotation and alteration omitted) (citing *Roni LLC*, 939 N.Y.S. 2d at 963). Given the requisite factual analysis, "a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Mosdos Chofetz Chaim*, 14 F. Supp. 3d at 208 (quoting *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006)); *see also Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 258 (S.D.N.Y. 2009) ("[B]ecause the existence of a fiduciary relationship normally depends on the facts of a particular relationship, a claim alleging such a relationship is generally not dismissed for failure to state a claim.").

### F. Plaintiffs State a Claim for Unjust Enrichment.

Defendants give two arguments for dismissal of Plaintiffs' unjust enrichment claim, but both should be rejected. First, Defendants argue Plaintiffs did not confer anything of value on Defendants because the CarePath platform is free to use (which is nowhere alleged in the Amended Complaint). Mot. at 24. "To the contrary, any increase in wealth—even if unrealized or illiquid—is an enrichment." *JPMorgan Chase Bank, N.A. v. Maurer*, 2015 WL 539494, at *6 (S.D.N.Y. Feb. 10, 2015). Plaintiffs allege paid Defendants and/or provided them their Personal Information. Am. Compl. ¶ 401. Moreover, Plaintiffs allege "Defendants enriched themselves by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Personal Information." *Id.* ¶ 408. These allegations suffice at the pleading stage. *See*

*Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *12 (S.D.N.Y. May 7, 2019) ("[T]he failure to secure a plaintiff's data can give rise to an unjust enrichment claim" when "a defendant has accepted the benefits accompanying plaintiff's data, but does so at the plaintiff's expense by not implementing adequate safeguards[.]" (citing *Sackin*, 278 F. Supp. 3d at 751)).

Second, Defendants argue Plaintiffs' relationship with IBM is too attenuated for an unjust enrichment claim where Plaintiffs signed up for Defendants' services through their healthcare providers. Mot. at 24. To the contrary, in the data breach context, numerous courts have held unjust enrichment claims under New York law sufficiently pled in similar circumstances, *i.e.*, when defendants knowingly retain a benefit. For example, because Plaintiffs provided their Personal Information as "patients of defendant's healthcare provider network," they have a viable unjust enrichment claim if the defendant "failed to abide by its obligations to safeguard plaintiffs' Personal Information." *Wallace*, 2021 WL 1109727, at *11 (denying motion to dismiss unjust enrichment claim). That is the basis of Plaintiffs' claim. *See* Am. Compl. ¶¶ 401-09. Accordingly, Plaintiffs' unjust enrichment claim should survive the Motion.

### G. Plaintiffs' State Consumer Protection Act Claims Are Well-Pled.[3]

#### 1. Plaintiff Wright and the Illinois Subclass State a Claim under the Illinois Consumer Fraud Act (ICFA).

Defendant urges dismissal of Plaintiff Wright's ICFA claim on the basis that the ICFA does not extend to the conduct of non-resident Defendants. Mot. at 27. However, Plaintiff Wright provided his PII and PHI to Defendants and interacted with Defendants' platform over the course of his medical treatment in Illinois, and Defendants solicited and marketed their business within Illinois. Am. Compl. ¶¶ 258, 431-32. *See Beaton v. SpeedyPC Software*, 666 F. Supp. 3d 724, 734

[3] Plaintiffs withdraw their claim asserted under the Florida Deceptive Unfair Trade Practices Act.

(N.D. Ill. 2023) (applying ICFA to nonresident defendant because the viewing of advertisements, purchase of products, and executing contracts In Illinois "all point to the disputed transactions falling within the ambit of the ICFA."); *cf. Sgouros v. Transunion Corp.*, Case No. 14 C 1850, 2016 WL 4398032 at *5 (N.D. Ill. Aug. 18, 2016) (rejecting application of ICFA to Illinois website defendant because the plaintiff searched for and purchased product from Missouri).

Additionally, The Illinois Personal Information Protection Act ("IPIPA") requires companies[4] that collect or maintain "records that contain personal information *concerning an Illinois resident* [to] implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, [. . . ] or disclosure." 815 ICSA 530/45 (emphasis added). Failure to do so is an unlawful practice under the ICFA. 815 ICSA 530/20. Accordingly, whether the ICFA claim is predicated on the transactions giving rise to the dispute occurring in Illinois, or the application of IPIPA, Plaintiff Wright's claim under the ICFA is properly before the Court.

**2. Plaintiff Rose and the California Subclass State a Claim under the California Consumer Privacy Act (CCPA).**

California Civil Code § 1798.150(a)(1) allows any individual whose personal information is disclosed as a result of a business's failure to implement reasonable data security measures a private right of action under the CCPA. Despite this**,** Defendants erroneously argue that Plaintiff Rose cannot sustain his CCPA claim because he has not alleged that his compromised PII/PHI is the type of information protected under the CCPA. Mot. at 28. However, under the CCPA "Personal Information" is defined as an unencrypted first and last name in combination with, *inter alia*, medical information or health insurance information. Cal. Civ. Code § 1798.81.5 (d)(1)(A)(iv)-(v). Here, Plaintiff Rose alleges that his unencrypted "name, date of birth, and medication, health

[4] A Data Collector is any "entity that, for any purpose, handles, collects, disseminates, or otherwise deals with nonpublic personal information." 815 Ill. Comp. Stat. Ann. 530/5.

condition, insurance information, and other sensitive PII and PHI" were provided to Defendants to use the CarePath application and compromised in the Data Breach. Am. Compl. ¶¶ 43, 295; *see also J.M. v. Illuminate Educ., Inc.*, 103 Cal. App. 5th 1125, 1133 (2024) (noting that the disclosure of medical information satisfies § 1798.81.5).

Defendants also argue that Plaintiffs failed to identify the particular cybersecurity failings leading to the disclosure of Plaintiff Rose's PII/PHI and that their allegations are thus conclusory. Mot. at 29. However, not only are the particular data security failings within the exclusive knowledge of Defendants, but Plaintiffs squarely allege that Defendants' failure to encrypt or redact data, or follow industry standards, and HIPPA and FTC guidance, allowed for the disclosure of Plaintiff Rose's PII/PHI. Am. Compl. ¶¶ 9, 83-110; *compare In re Sequoia Benefits & Ins. Data Breach Litig.*, No. 22-CV-08217-RFL, 2024 WL 1091195, at *7 (N.D. Cal. Feb. 22, 2024) ("Plaintiffs further allege that Defendants did not take specific actions such as encrypting their PII, deleting data that was no longer needed, as well as failing to follow FTC Guidelines, and industry standards.") (internal citations omitted); *see also In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (CCPA claim sufficiently stated where the plaintiff alleged "a Data Breach caused by Defendants' purported lack of reasonable security measures that allowed third parties to view and steal her personal information"); *see also Kirsten v. California Pizza Kitchen, Inc.*, No. 221CV09578DOCKES, 2022 WL 16894503, at *3 (C.D. Cal. July 29, 2022), reconsideration denied, No. 221CV09578DOCKES, 2022 WL 16894880 (C.D. Cal. Sept. 8, 2022) (denying dismissal of CCPA claim). Clearly, Plaintiff Rose has pleaded sufficient facts to establish his CCPA claim here.

Additionally, while Defendants argue that they have cured their violations of the CCPA by implementing data security enhancements, "in fact, the CCPA was amended on January 1, 2023 to

clarify that even '[t]he implementation and maintenance of reasonable security procedures and practices . . . following a breach does not constitute a cure with respect to that breach.' *In re Progressive Leasing Breach Litig.*, No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744, at *19–20 (D. Utah Jan. 16, 2025) (quoting Cal. Civ. Code § 1798.150(b); *see also Florence v. Ord. Express, Inc.*, 674 F. Supp. 3d 472, 483 (N.D. Ill. 2023) (same). Indeed, not only does the plain text of the CCPA disclaim that enhanced security measures suffice to cure a violation of the disclosure of medical information but logically these measures are forward looking and cannot rectify the disclosure of the information in the first instance. *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *12–14 (D. Nev. Sept. 19, 2024) ("Eureka's measures were designed for the purpose of addressing future threats, not curing the unauthorized release of the plaintiffs' data.").

Next Defendants argue that Plaintiff Rose has not alleged damages under the CCPA as lost time does not satisfy the statute. Mot. at 29. However, in addition to injunctive relief, the CCPA allows a plaintiff to recover "[t]o recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater." Cal. Civ. Code § 1798.150(a)(1)(A). Nothing in the statute requires pecuniary loss for a plaintiff to bring a claim under the CCPA or to be entitled to statutory damages in the event the defendant fails to cure the violation. *In re Eureka*, 2024 WL 4253198, at *12 ("The CCPA allows plaintiffs to seek relief for "actual pecuniary damages," for statutory damages, or for both.") (citing Cal. Civ. Code § 1798.150(b); *In re Progressive*, 2025 WL 213744, at *21 (Noting that in the absence of pecuniary losses, "[t]he CCPA instead affords these plaintiffs the ability to recover statutory damages."). Here, because Plaintiff Rose complied with the requirements of Civil Code § 1798.150(b)(1), and Defendants failed to cure their violations, he

and the California Subclass are entitled to statutory damages.

**3. Plaintiff Rose and the California Subclass State a Claim under the California Confidentiality of Medical Information Act (CMIA).**

The CMIA prohibits Defendants from knowingly or negligently releasing an individual's PHI and obligates them to treat PHI in a "manner that preserves the confidentiality of the information contained therein." Civ. Code §§ 56.36, 56.101(a); *Regents of Univ. of Cal. v. Super. Ct.* (2013) 220 Cal.App.4th 549, 560. Defendants argue they are not liable under the CMIA because (1) they are not entities subject to the CMIA, (2) they did not engage in an 'affirmative communicative act' under Civil Code § 56.10; and 32) Plaintiffs did not allege an unauthorized person viewed their medical information under Civil Code § 56.101(a). The Complaint contains such allegations, thus, Defendants' demurrer as to the CMIA should be overruled.

**a) Defendants are subject to the CMIA.**

Defendants' argument mischaracterizes the Amended Complaint as relying solely on conclusory allegations, ignoring the detailed factual allegations incorporated by reference in Paragraph 454, which describe the nature of the Janssen CarePath program, the medical information it maintains, and Defendants' roles in offering and managing it. These facts plausibly establish coverage under the CMIA, distinguishing this case from the authorities Defendants cite.

First, the Amended Complaint incorporates extensive factual allegations supporting that Janssen qualifies as a "provider of health care" under Cal. Civ. Code § 56.06(b), which extends the definition to include "[a]ny business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information . . . in order to make the information available to an individual or a provider of health care at the request of the individual or for analysis by the provider of health care, or that otherwise maintains medical information for such purposes." The Amended Complaint pleads that Janssen owns and

operates Janssen CarePath, "an internet accessible patient support program that patients use to research, manage, and find financial assistance for their prescription medications." Am. Compl. ¶¶ 2, 31, 187. This program is expressly described as software offered to consumers (patients) as part of their "ongoing care," with nearly 1.2 million patients using it in 2022 alone. *Id.* ¶¶ 2, 31. To use CarePath, patients must provide sensitive medical information, including "information about medications and medical conditions," as well as health insurance details—information that qualifies as "medical information" under Cal. Civ. Code § 56.05(i) (defining it as "any individually identifiable information . . . regarding a patient's medical history, mental, or physical condition, or treatment"). *Id.* ¶¶ 4, 33, 43. CarePath maintains this information in a database to enable patients to "research" and "manage" their prescriptions, making it available to them for personal use and potentially for sharing with providers or insurers in the context of financial assistance or ongoing care. *Id.* ¶¶ 2, 31, 33, 43, 46. These facts plausibly allege that CarePath is software designed to "maintain medical information" for availability to the individual patient, fitting squarely within § 56.06(b)'s enumerated purposes.

IBM, in turn, is alleged to be a "contractor" under Cal. Civ. Code § 56.06(d) (defining it as a person or entity that "creates, receives, maintains, or transmits medical information" on behalf of a provider of health care). The Amended Complaint pleads that IBM, as Janssen's service provider, "manages the application and the third-party database that supports Janssen CarePath," including storing and handling the same medical information. Am. Compl. ¶¶ 3, 32, 43. IBM's role in maintaining the database containing patients' medical conditions, medications, and health insurance information subjects it to the CMIA's requirements as a contractor. *Id.* ¶¶ 3, 4, 32, 43, 46; *see also* Cal. Civ. Code § 56.10(d) (prohibiting contractors from disclosing medical information without authorization).

These are not mere "conclusory recitations" but specific factual allegations about the program's functionality, the information it handles, and Defendants' roles—facts that must be accepted as true at the pleading stage. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants' attempt to dismiss the program as merely for "research, manage, and find financial assistance overlooks that managing prescriptions inherently involves maintaining and accessing medical information about conditions and treatments, which aligns with § 56.06(b). Moreover, the Amended Complaint alleges that patients rely on CarePath as part of their "continuum of care" (*id., e.g.*, Am. Compl. ¶¶ 2, 162, 174), plausibly implying availability for analysis by providers if needed for financial assistance or prescription management.

Defendants' cited cases are inapposite. In *Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747, at *1 (9th Cir. Dec. 8, 2022), the Ninth Circuit affirmed dismissal where the complaint offered only a "conclusory statement that [defendant] provides 'software or hardware' for consumers" without any supporting facts about the software's purpose or design. Here, Plaintiffs allege Defendants collected PHI for direct use in patient care and prescription management, not as a generic software vendor. That factual linkage is precisely what was missing in *Oddei*.

**b) Plaintiffs allege Defendants affirmatively shared their Personal Information.**

Civil Code § 56.10 provides that "[a] provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." Although "disclosure" is not defined by statute, courts have inferred it to mean, within the "context of CMIA and the protections afforded confidential medical information[,] an affirmative act of communication." *Regents*, 220 Cal.App.4th at 564, *see also Sutter Health v. Super. Ct.* (2014) 227 Cal.App.4th 1546, 1555-56 ("the context and ordinary meaning suggest that disclosure occurs when the health care provider affirmatively shares medical information with

another person or entity."). While discovery will reveal the exact mechanism by which the Data Breach occurred, Plaintiffs adequately allege Defendants' affirmative sharing of PHI with unauthorized parties. Am. Compl. ¶¶ 455 (disclosed PHI to unauthorized third parties); 456 (direct and proximate causation); 458 (PHI disclosed to and viewed by third parties).

Moreover, given Defendants' actions allowed for a breach that targeted and exfiltrated Plaintiffs' PHI, Defendants (through their own servers that maintained the medical information) affirmatively shared (*i.e.*, affirmatively communicated) the medical information with the hackers. Defendants' reliance on cases where computers or hard drives were stolen, such as in *Sutter Health* and *Regents*, is unavailing; those circumstances and the defendants own actions were vastly different than one where data was specifically targeted and Defendants servers communicated the PHI to the unauthorized parties. This is neither a stolen laptop nor hard drive case.

**c) Plaintiffs allege unauthorize persons viewed their medical information.**

Civil Code § 56.101(a) provides that "[e]very provider of health care . . . or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Under § 56.36, an individual may bring an action for nominal damages of $1,000 or actual damages against an entity that negligently released their confidential information. All that is required is that the plaintiff allege the defendant's "negligence result[ed] in unauthorized or wrongful access to the information," *i.e.,* that the information was "improperly viewed or otherwise accessed." *Regents*, 220 Cal.App.4th at 554; *see Sutter Health*, 227 Cal.App.4th at 1557 ("No breach of confidentiality takes place until an unauthorized person views the medical information.").

Plaintiffs allege unauthorized parties "accessed and viewed" their PHI. Am. Compl. ¶¶ 4, 7, 43, 449. Indeed, Defendants very own data breach Notice Letter expressly admits to

unauthorized access. These allegations must be taken as true. *Ambry*, 567 F. Supp. 3d at 1149 ("At the pleading stage, Plaintiffs have sufficiently stated a claim under Section 56.101.") (citing *Stasi*, 501 F. Supp. 3d at 924 ("Ultimately, it may be that Plaintiffs' allegation that their information was actually viewed while it was accessible on the internet will prove to be unsubstantiated. At this early stage in the litigation, however, Plaintiffs allege a plausible claim based on violations of sections 56.101(a) and 56.36(b) of CMIA.").

Because Plaintiffs expressly allege their Personal Information was viewed, there is no need for the Court to infer it, as courts have done in federal cases cited by Defendants where express allegations were absent. *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.* (S.D. Cal. 2020) 613 F. Supp. 3d 1284, 1299 (finding notification of data breach and allegations of increase in medical related spam enough to infer plaintiff's information was viewed). Defendants' reliance on such federal cases to suggest Plaintiffs must allege specific facts supporting an inference that their confidential information was viewed is merely an attempt to apply federal courts' 'plausibility' standards to this state law case where "facts alleged in the pleading are deemed to be true, however improbable they may be." *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.

Defendants' reliance on *Regents* and *Sutter Health*, cases involving stolen computers and hard drives—without allegations that unauthorized parties actually sought and viewed any medical information—is a far cry from this case where Plaintiffs' medical information was specifically targeted, viewed, and exfiltrated by hackers. Thus, Plaintiffs have met the pleading standard and Plaintiffs' experts should be afforded an opportunity, after discovery, to explain how Plaintiffs' and Class members' Personal Information was exfiltrated and viewed by unauthorized parties.

#### 4. Plaintiff Rose and the California Subclass State a Claim under the California Unfair Competition Act (UCL).

##### a) Plaintiffs allege standing under the UCL.

Standing under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), requires (1) a loss or deprivation of money or property sufficient to qualify as an injury in fact; and (2) an injury resulting from defendant's unfair business practices. *Kwikset Corp. v. Super. Ct.* (2011) 51 Cal.4th 310, 323-27; *Hall v. Time, Inc.* (2008) 158 Cal.App.4th 847, 854. Plaintiffs allege, among other injuries, loss of the benefit of their bargain, lost time, and diminution in the value of their Personal Information. Am. Compl. ¶ 12. California courts recognize loss of the benefit of the bargain as a cognizable injury under the UCL in data breach cases. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 527 (2022) (finding "UCL standing under their benefit-of-the-bargain theory."). Plaintiffs also identified specific policies, provisions, and representations by Defendants on which they relied. *See, e.g.*, Am. Compl. ¶ 58.

For the unlawful prong, reliance is only necessary when the predicate for unlawfulness is misrepresentation and deception. *Durell*, 183 Cal.App.4th at 1363. While Plaintiffs alleged reliance, they also alleged unlawful conduct based, in part, on Defendants' violations of HIPAA, the CMIA, and Civ. Code § 1798.82, among other statutes. Am. Compl. ¶¶ 93-97, 454-58. Plaintiffs have standing for their UCL claims.

##### b) Plaintiffs allege all UCL elements with reasonable particularity.

The UCL's "scope is broad" and "[i]ts coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180 (quoting *Rubin v. Green* (1993) 4 Cal.4th 1187, 1200). The "language referring to 'any unlawful, unfair or fraudulent' practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other

law." *Id.* And, because the language of the statue is disjunctive, "a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Id.* "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer." *Brady v. Bayer Corp.* (2018) 26 Cal.App.5th 1156, 1164.

"Generally, 'violation of almost any law may serve as a basis for a UCL claim.'" *Jordan v. Paul Fin., LLC* (N.D. Cal. 2010) 745 F. Supp. 2d 1084, 1098. Here, Plaintiffs allege Defendants' practices violated HIPAA, the CMIA, and Civil Code § 1798.82, among other statutes. Am. Compl. ¶¶ 93-97, 454-58. Plaintiffs' Complaint "identif[ies] the particular section of the statute[s] violated" and "describe with reasonable particularity the facts supporting the violation[s]." *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 986 (N.D. Cal. 2016). This is sufficient for the UCL claim to proceed. *Brady*, 26 Cal.App.5th at 1164; *Solara*, 613 F. Supp. 3d at 1303 (addressing prematurity and standard on a motion to dismiss).

While no bright line exists for determining what constitutes a UCL "unfair business practice," one definition is that it "'offends an established public policy' or 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *McDonald v. Coldwell Banker* (9th Cir. 2008) 543 F.3d 498, 506 (quoting *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530). Other courts have applied a balancing test and find a practice unfair if (1) the harm to the consumer outweighs the utility of a practice to the defendant; or (2) a business practice violates public policy as declared by specific constitutional, statutory or regulatory provisions. *Brod v. Sioux Honey Ass'n* (N.D. Cal. 2013) 927 F. Supp. 2d 811. The Amended Complaint is sufficient under either test. Other than saving money, there is no utility to maintaining inadequate data security, and the potential harm to class members for doing so is extraordinarily

high. Am. Compl. ¶¶ 73-88. Among the host of predicate violations (*id.* ¶¶ 93-97, 454-58), the failure to disclose material information routinely serves as a basis for violation of the UCL's unfair prong. *Falk v. GMC* (N.D. Cal. 2007) 496 F. Supp. 2d 1088, 1099. Contrary to their assurances, Defendants failed to adequately safeguard their network (Am. Compl. ¶ 59) and disclose this material fact to Plaintiffs (*id.* ¶¶ 329), which constitutes "unfair" practice under the UCL.

**c) Plaintiffs are entitled to restitution or injunctive relief.**

"[T]he remedy for a UCL violation is either injunctive relief or restitution." *Fresno Motors, Ltd. Liab. Co. v. Mercedes Benz USA, Ltd. Liab. Co.* (9th Cir. 2014) 771 F.3d 1119, 1135. "Restitution under § 17203 is confined to restoration of any interest in money or property, real or personal, which may have been acquired by means of such unfair competition." *Id.* Here, injunctive relief is appropriate and necessary to curb or halt the continued risk from Defendants' continuing failure to implement proper cybersecurity practices as Defendants still maintain the Personal Information of Plaintiffs and the Class. Those failures, coupled with Plaintiffs' reasonable belief that Defendants had proper cybersecurity, constitute unfair, unlawful, and fraudulent business practices by Defendants that need to be enjoined by the Court. Am. Compl. ¶¶ 459-67.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.

Dated: August 18, 2025

Respectfully submitted,

/s/ Jeff Ostrow________
Jeff Ostrow (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd, 5th Fl.
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street Fourteenth Floor
New York, NY 10004
Tel. 646.357.1100
snathan@hausfeld.com

James J. Pizzirusso*
Amanda V. Boltax*
**HAUSFELD LLP**
888 16th Street N.W. Suite 300
Washington, D.C. 20006
Tel. 202.540.7200
jpizzirusso@hausfeld.com
mboltax@hausfeld.com

Daniel Srourian (Admitted *Pro Hac Vice*)
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd., #1710
Los Angeles, California 90010
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

John A. Yanchunis*
JYanchunis@forthepeople.com
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin St. 7th Fl.

Tampa, Florida 33602
T: (813) 223-5505
F: (813) 223-5402

*Counsel for Representative Plaintiffs and the Proposed Class(es)*

**pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 18, 2025 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Jeff Ostrow*________
Jeff Ostrow