**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE INTERNATIONAL BUSINESS MACHINES CORPORATION DATA BREACH LITIGATION | Master File No. 7:23-cv-08421-NSR<br><br>**ECF Case**<br><br>Hon. Nelson S. Román<br>Magistrate Judge Victoria Reznik |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF INTERNATIONAL BUSINESS MACHINES CORPORATION AND JOHNSON & JOHNSON HEALTHCARE SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Martin L. Roth, P.C. (*pro hac vice*)
Keith Holt (*pro hac vice*)
Alexandra Schrader (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
United States
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200
rothm@kirkland.com
keith.holt@kirkland.com
alexandra.schrader@kirkland.com

Lamina Bowen
Madeleine Xu
601 Lexington Avenue
KIRKLAND & ELLIS LLP
New York, NY 10022
United States
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900
lamina.bowen@kirkland.com
madeleine.xu@kirkland.com

Devin Anderson (*pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: +1 801 877 8100
Facsimile: +1 801 877 8101
devin.anderson@kirkland.com

*Counsel for Defendants International Business Machines Corporation and Johnson & Johnson Healthcare Systems, Inc.*

# TABLE OF CONTENTS

**Page**


ARGUMENT ........................................................................................................ 1

I. Plaintiffs Do Not Have Article III Standing. ........................................................ 1

A. Plaintiffs' Injuries Are Not Caused by the Incident................................................ 2

B. Plaintiffs' Hypothetical Injuries Are Not Cognizable and Do Not Establish Standing. ........................................................................................................ 3

II. Plaintiffs' State Law Claims Should Be Dismissed............................................... 7

CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....................13

*Avila v. Acacia Network*,
2025 WL 2161280 (S.D.N.Y. Mar. 28, 2025) ....................12

*Beaton v. SpeedyPC Software*,
666 F. Supp. 3d 724 (N.D. Ill. 2023) ....................12

*Bohnak v. Marsh & McLennan Companies, Inc.*,
79 F.4th 276 (2d. Cir. 2023) ....................3, 5

*In re Canon U.S.A. Data Breach Litig.*,
2022 WL 22248656 (E.D.N.Y. Mar. 15, 2022) ....................3, 10

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ....................9

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ....................8

*Cooper v. Bonobos, Inc.,*
2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ....................6

*Daly v. Metropolitan Life Insurance Company*,
782 N.Y.S.2d 530 N.Y. (Sup. Ct. 2004) ....................10

*Doe v. Cmty. Health Plan-Kaiser Corp.*,
268 A.D.2d 183 (2000) ....................10

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ....................8

*Fero v. Excellus Health Plan, Inc.*,
304 F. Supp. 3d 333 (W.D.N.Y. 2018) ....................8

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ....................15

*In re GE/CBPS Data Breach Litigation*,
2021 WL 3406374 (S.D.N.Y. Aug. 8, 2021) ....................8, 9

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) ... 3

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ... 4

*J.M. v. Illuminate Educ., Inc.*,
103 Cal. App. 5th 1125 (2024) ... 13

*Jones v. Commerce Bancorp, Inc.*,
2006 WL 1409492 (S.D.N.Y. May 23, 2006) ... 10

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*,
257 F. Supp. 3d 348 (S.D.N.Y. 2017) ... 8

*Kylie S. v. Pearson PLC*,
475 F. Supp. 3d 841 (N.D. Ill. 2020) ... 6

*LaSalle Nat. Bank v Ernst & Young LLP*,
729 N.Y.S.2d 671 (N.Y. App. Div. 2001) ... 10

*Malinowski v. Int'l Bus. Machines Corp.*,
2025 WL 965812 (S.D.N.Y. Mar. 31, 2025) ... 1, 2

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021) ... 5, 6, 7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ... 6

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ... 15

*O'Leary v. TrustedID, Inc.*,
60 F.4th 240 (4th Cir. 2023) ... 4

*Oddei v. Optum, Inc.,*
2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) ... 14

*Parker v. Governor of Pennsylvania*,
2023 WL 5814603 (3d Cir. 2023) ... 4

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
198 F. Supp. 3d 1183 (D. Or. 2016) ... 11

*In re Progressive Leasing Breach Litigation,*
2025 WL 213744 (D. Utah Jan. 16, 2025) ... 14

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Prutsman v. Nonstop Admin. & Ins. Servs., Inc.*,
2023 WL 5257696 (N.D. Cal. Aug. 16, 2023) ....................11

*Regnante v. Sec. & Exch. Offs.*,
134 F. Supp. 3d 749 (S.D.N.Y. 2015)....................11

*Rudolph v. Hudson's Bay Co.*,
2019 WL 2023713 (S.D.N.Y. May 7, 2019) ....................11

*Sackin v. TransPerfect Glob., Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017)....................4, 9

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ....................13

*Shull v. TBTF Prods. Inc.*,
2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019)....................9

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ....................8, 9

*Smith v. Apple, Inc.*,
583 F. Supp. 3d 554 (S.D.N.Y. 2022)....................9

*Sutter Health v. Superior Court of Sacramento County*,
227 Cal. App. 4th 1546 (N.Y. 2014)....................14, 15

*TransUnion v. Ramirez*,
594 U.S. 413 (2021)....................3

*In re Unite Here Data Sec. Incident Litig.*,
740 F. Supp. 3d 364 (S.D.N.Y. 2024)....................4

*In re USAA Data Sec. Litig.*,
621 F. Supp. 3d 454 (S.D.N.Y. 2022)....................3

*Wallace v. Health Quest Systems, Inc.*,
2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ....................9, 12

*In re Waste Mgmt. Data Breach Litig.*,
2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)....................7, 13, 14

*Webb v. Injured Workers Pharm., LLC*,
72 F.4th 365 (1st Cir. 2023)....................6

*Zaretsky v. Gemological Inst. of Am., Inc.*,
2014 WL 1678990 (S.D.N.Y. Apr. 28, 2014)....................11

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

**Statutes**

Cal. Bus. & Prof. Code § 17203 ....................15

N.Y. Pub. Health Law § 4401 ....................10

Plaintiffs' Opposition confirms that this case should now be dismissed with prejudice. Their brief is most notable for what it does not say. Plaintiffs do not engage with this Court's simple assignment: "offer further factual averments that articulate a causal connection between the purported injuries and Defendants' conduct." *Malinowski v. Int'l Bus. Machines Corp.*, 2025 WL 965812, at *4 (S.D.N.Y. Mar. 31, 2025). Their new complaint made *no material changes* to their allegations of traceability. Because they cannot muster the necessary factual allegations, Plaintiffs' arguments revolve around abstract concerns about the "realities of data breaches" in an "increasingly digital economy" or their own expectation that something must be done about the Incident. *See, e.g.*, Opp. at 1, 3. None of this speculation establishes Article III standing. As before, the disconnect between the alleged harms and scope of the Incident is fatal to Plaintiffs' claims.

In the remainder of their Opposition, Plaintiffs conjure strawman arguments and fail to grapple with the weight of authority precluding their claims. Nearly two years since the Incident, it is clear that no amendment will suffice. This case should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS DO NOT HAVE ARTICLE III STANDING.

This Court previously found Plaintiffs "do not have Article III standing" because they "fail[ed] to proffer sufficient allegations to satisfy Article III's ***traceability requirement***." *Malinowski*, 2025 WL 965812, at *3-4.[1] The Court's direction was clear: "allege a causal connection between the injury and the Defendants' conduct." *Id.* at *4. Plaintiffs disregarded this direction, and their Amended Complaint adds no relevant facts to show causation. Indeed, their Opposition devotes fewer than two pages to Plaintiffs' continued failure to establish traceability—the basis for the prior dismissal (Opp. at 14-15)—while spending more than 10 pages on injury-in-fact arguments (*id.* at 3-14). Plaintiffs must have both, but have adequately alleged neither.

[1] All emphasis is added, quotations cleaned up, and citations omitted unless otherwise noted.

**A. Plaintiffs' Injuries Are Not Caused by the Incident.**

This Court previously found that Plaintiffs "fail[ed] to proffer sufficient allegations to satisfy Article III's traceability requirement," particularly the requisite causal connection tying the Incident to the injuries they allege. *Malinowski*, 2025 WL 965812, at *3-4. Plaintiffs' new allegations and their Opposition do not resolve, or even address, this Court's concerns.

*First*, Plaintiffs claim they have established traceability because "stolen Personal Information is regularly used to perpetrate identity theft and other forms of fraud." Opp. at 14. These vague generalizations, which point to no factual allegations connecting the Incident to their alleged injuries, are, at best, the "mere correlation" that this Court already found insufficient. *Malinowski*, 2025 WL 965812, at *4. This alone warrants dismissal with prejudice.

*Second*, Plaintiffs claim that Defendants' arguments are "based on the same faulty premise concerning the purported significance of the Personal Information exposed in the Data Breach." Opp. at 14. Not so. The Court specifically found that Plaintiffs cannot establish traceability by "stating in one breath that unauthorized store and credit accounts were opened in their names, and, in the next breath, failing to plead that the information necessary to open such accounts was contained within the CarePath database and was part of the data exposed within the Data Breach." *Malinowski*, 2025 WL 965812, at *4. It is Plaintiffs who disregard this admonition and continue to argue that "it is of no moment that highly sensitive data beyond credit card and financial information was [not] exposed in this Data Breach." Opp. at 14. The information Plaintiffs allege was exposed still "fail[s] to demonstrate that the decried adverse actions could be reasonably construed as resulting from the Data Breach." *Malinowski*, 2025 WL 965812, at *4.

*Third*, Plaintiffs argue that their injuries "are temporally and logically linked directly to the type of Personal Information stolen," and therefore, ***must*** be traceable to the Incident. Opp. at 15. But the Court has already rejected this, too. *Malinowski*, 2025 WL 965812, at *4. By relying

exclusively on coincidental timing, Plaintiffs again ignore that "correlation is not tantamount to causation, and, without more than mere correlation, a causal relationship cannot be established." *Id.* Plaintiffs' cases are distinguishable because each lodged the type of specific allegations this Court requested, but did not get, here. *See In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *6 (E.D.N.Y. July 21, 2023) (plaintiffs "experienced the fraud '***specifically linked*** to driver's license numbers'"); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 467 n.5 (S.D.N.Y. 2022) (complaint had "well-pleaded allegations of ***actual proof of identity theft as a result of*** the disclosure"); *In re Canon U.S.A. Data Breach Litig.*, 2022 WL 22248656, at *2, *5 (E.D.N.Y. Mar. 15, 2022) (Social Security numbers, driver's license or government identification numbers, and financial account numbers were specifically tied to accounts set up after the attack). The Amended Complaint alleges ***no facts*** showing that any theft happened ***because of*** the Incident, as opposed to any of the plethora of other reasons their data might become available.[2]

### B. Plaintiffs' Hypothetical Injuries Are Not Cognizable and Do Not Establish Standing.

Plaintiffs primarily argue that "unauthorized disclosure of Plaintiffs' Personal Information is a concrete injury sufficient to confer Article III standing here." Opp. at 4-5.[3] Plaintiffs misread the law. The Supreme Court has never held that disclosure of personal data alone—without a showing that the disclosure translated into an actual, felt harm—gives rise to an injury sufficient to support Article III standing. *See generally TransUnion v. Ramirez*, 594 U.S. 413 (2021); *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276 (2d. Cir. 2023). And courts across

---

2 Plaintiffs also claim they are "not required to allege Defendants' actions were the last step in the chain of causation." Opp. at 15. Defendants do not argue that there is an intervening cause—nor did the Court raise that as a concern when it found no traceability. Rather, Plaintiffs have not established anything beyond correlation at ***any*** step in the chain. Mot. at 6-11.

3 Plaintiffs also claim that in the Notice Letter "Defendants readily admitted" an unauthorized third-party accessed Plaintiffs' information. Opp. at 4. Even if this were true—and it is not, *e.g.,* Mot. at 13—as explained herein, the fact of theft alone is not enough to confer standing.

the country agree that "[b]eing subjected to a data breach isn't in and of itself sufficient to establish Article III standing." *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 244 (4th Cir. 2023); *Parker v. Governor of Pennsylvania*, 2023 WL 5814603, at *3 (3d Cir. 2023) (similar). Rather, "in data breach cases, courts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all. Otherwise, every data breach [] would confer standing, regardless of whether private information is exposed." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022). In sum, data breach standing is not automatic. Rather, Plaintiffs must translate that alleged disclosure into a concrete harm. Plaintiffs have not done so here.

1. No material risk of future medical identity theft.[4]

Plaintiffs have failed to allege facts sufficient to establish an imminent and substantial risk of future harm under the Second Circuit's *McMorris* framework.

***Targeted Attack.*** Plaintiffs acknowledge that this is "the most important factor" under *McMorris* (Opp. at 7), yet repeatedly obscure that the Incident—as alleged and explained in the Notice Letter—was a technical vulnerability and ***not*** an actual attack. Mot. at 13. Instead, Plaintiffs misleadingly cite to *In re Unite Here Data Sec. Incident Litigation*—which Defendants already addressed in their Motion (Mot. at 10)—and *Sackin v. TransPerfect Global, Inc.* for the proposition that "[w]hen stolen data includes the type of Personal Information stolen here, 'it is reasonable to infer the purpose of the attack was to misuse the data.'" Opp. at 7-8. But both cases involved highly sensitive data that is not at issue here. *See In re Unite*, 740 F. Supp. 3d 364, 376 (S.D.N.Y. 2024) (data breach that exposed "name, Social Security number, date of birth, financial account information, driver's license, state identification number, and medical information"); *see also Sackin*, 278 F. Supp. 3d 739, 744 (S.D.N.Y. 2017) (scam involving Social Security numbers,

---

[4] Plaintiffs' Opposition only posits injury-in-fact in the form of risk of future harm, actual misuse, and mitigation or emotional damage. We therefore focus on these theories.

direct deposit bank account numbers, and routing numbers). While the Court must assume Plaintiffs' facts and draw *reasonable* inferences in their favor, the Incident does not involve the highly sensitive information that would entitle them to an inference that the Incident was targeted.

***Actual Misuse.*** Plaintiffs claim the Amended Complaint is "replete with specific examples of actual and attempted misuse of Plaintiffs' Personal Information after it was stolen in the Data Breach." Opp. at 9. Plaintiffs again misstate their allegations and the law. As an initial matter, *McMorris* looks to ***actual*** misuse, not ***attempted*** misuse. *See McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301-03 (2d Cir. 2021). The remainder of Plaintiffs' argument simply recites black-letter law that only applies if traceability is adequately alleged. Opp. at 9-10. As the Court previously found, and Defendants have discussed, Plaintiffs allege no facts showing that the "unauthorized charges on payment cards and bank accounts" or "fraudulent attempts to open accounts and take out loans" (*id.*) are plausibly connected ***to the breach at issue here***. *See* Mot. § I.A.

***Type of Information.*** Plaintiffs argue with respect to the third *McMorris* factor that the "highly sensitive nature of the Personal Information in the Data Breach here" alone "demonstrates Plaintiffs' Article III standing." Opp. at 11. Plaintiffs fail to cite a single case holding that a breach involving data like that at issue here gives rise to Article III standing. For good reason: as the Second Circuit explained, there are "situations"—like this one—"in which the nature of the data itself reveals that plaintiffs are ***not*** substantially at risk of identity theft as a result of the exposure." *McMorris*, 995 F.3d at 304 n.6. *Bohnak* noted that Social Security numbers, "for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change." 79 F.4th at 281. Here, however, "Social Security number[s] and financial account information were ***not contained in the [CarePath] database or affected***." Mot. at Ex. B. While Plaintiffs generalize that "criminals build and put to use 'Fullz' packages" (Opp. at 12), Plaintiffs do not specifically allege that any "Fullz"

package was created here. As in *Cooper v. Bonobos, Inc.*, Plaintiffs cannot "establish standing based on an increased risk of identity theft or fraud … because the stolen and posted information was all 'less sensitive data, such as basic publicly available information, or data that can be rendered useless to cybercriminals.'" 2022 WL 170622, at *3-4 (S.D.N.Y. Jan. 19, 2022).

Even with respect to "health information," CarePath collects only the name of the JJIM medication prescribed and the ***type*** of insurance coverage (commercial, private, government, or none) the patient has. *See* Mot. at 8-9. Unlike in the cases they rely on, Plaintiffs *do not* allege that CarePath contained health insurance identification numbers, claims information, or other kinds of sensitive patient, insurance, or health information. *Cf. Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333, 335 (W.D.N.Y. 2018) ("social security numbers … member identification numbers, financial payment information (including credit card numbers), and medical insurance claims information") (Opp. at 6); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) (non-data breach case involving patient status and the content of patient communications with their medical providers) (Opp. at 7); *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 370 (1st Cir. 2023) ("patient names and Social Security numbers") (Opp. at 11).[5]

2. No mitigation expenses or emotional damage.

Finally, Plaintiffs argue that their "mitigation expenses incurred, lost time, and emotional damages represent separate, present harms that result from the Data Breach." Opp. at 13. But "where plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury." *McMorris*, 995 F.3d

[5] Plaintiffs argue that date of birth is alone sufficient. But *McMorris*—cited by Plaintiffs for that proposition (Opp. at 12)—discussed a hypothetical scenario where a plaintiff's ***credit card*** was also stolen. *McMorris*, 995 F.3d at 302. And courts in other jurisdictions have rejected Plaintiffs' leap. *See Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 847-48 (N.D. Ill. 2020) (no Article III standing where "names, emails, and dates of birth of registered students cannot 'easily be used in fraudulent transactions'").

at 303. For the same reasons, even if Defendants "encouraged Plaintiffs and putative class members to remain vigilant" (Opp. at 12), Defendants did not encourage Plaintiffs to incur any monetary losses. Because Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *McMorris*, 995 F.3d at 303, Plaintiffs' failure to establish an imminent risk of future harm is fatal to both its mitigation-expenses and emotional-damage theories of standing. Mot. at 17-18. Plaintiffs entirely ignore Defendants' cases directly on this point. *Id.*

* * *

In sum, the Opposition confirms that Plaintiffs cannot plead standing under any theory and thus, their Amended Complaint should be dismissed with prejudice.

## II. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED.[6]

***Negligence.*** Plaintiffs fail to state a negligence claim because they do not plead causation and injury. Plaintiffs argue that by challenging causation—a required element of nearly all claims in this case—Defendants are merely "pointing fingers at other parties." Opp. at 15. But Plaintiffs' detour into proximate causation and reasonable foreseeability misses Defendants' argument entirely. *Id.* at 15-16. Defendants do not argue at this stage that others are to blame. Rather, Defendants argue that even if all the allegations in the Amended Complaint are true, Plaintiffs still have not alleged, as a matter of law, that Defendants acted negligently or caused Plaintiffs' injuries. Mot. at 19-20. In distorting Defendants' argument, Plaintiffs fail to engage with the fact that they must "***plausibly allege*** not only that there was a data breach, but ***that the breach was caused by [defendant's] unreasonable conduct***." *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *5 (S.D.N.Y. Feb. 24, 2022). That requires alleging "facts regarding any specific measures that

---

6 For the reasons stated in Defendants' Motion and above, Plaintiffs have not established the requisite causation and/or actual injury for any of their state law claims. Mot. at § II.

[the defendant] did or didn't take" or "the manner in which their systems were breached," because "the law does not impose strict liability for harms arising out of the storage of personal information." *Id.* at *4-5. Plaintiffs have not pointed to any specific measure that IBM or Janssen failed to take, and none of Plaintiffs' cited cases relieve them of that burden. Plaintiffs' own cases are inapposite. For example, *Fero* involved proximate causation for the traceability element of Article III standing, not for a negligence claim, *Fero v. Excellus Health Plan, Inc.,* 236 F. Supp. 3d 735, 756 (W.D.N.Y. 2017) (Opp. at 16), and *Kortright* involved the reasonable reliance element of a negligent ***misrepresentation*** claim (not alleged here). *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 357 (S.D.N.Y. 2017) (Opp. at 16). Moreover, *In re GE/CBPS Data Breach Litigation* involved detailed allegations of safeguards not alleged here. 2021 WL 3406374, at *8 (S.D.N.Y. Aug. 8, 2021) (Opp. at 17). Plaintiffs' negligence claim fails.[7]

***Negligence per se.*** Plaintiffs attempt to revive their negligence *per se* claim by applying the HIPAA and FTC Act standards of care in a negligence action. Opp. at 17. The weight of New York case law, including some of Plaintiffs' own citations, rejects this approach. *See, e.g., Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020) (dismissing negligence *per se* claim "because if mere proof of a violation of ... were to establish negligence per se, plaintiff would effectively be afforded a private right of action that the [FTC Act] does not recognize."); *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *10 (dismissing

[7] Plaintiffs state without support that they "alleged concrete injuries that include the inherent lost value of their PII" (Opp. at 16-17), but do not actually rebut Defendants' lost value arguments (Mot. at 16-17), so the theory is forfeited. *See, e.g., Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (collecting cases).

negligence *per se* claim premised on FTC Act).[8] Plaintiffs do not grapple with these or Defendants' other cases where plaintiffs attempted and failed to base negligence *per se* claims on HIPAA violations. Mot. at 20-21. Thus, Plaintiffs' negligence *per se* claim should be dismissed.

***Breach of Implied Contract.*** Plaintiffs argue they had "a meeting of the minds with Janssen regarding his [sic] obligation to protect confidential data." Opp. at 18. But Plaintiffs' own cases undercut their claims that an implied contract exists with Janssen. For example, in *Sackin*, plaintiffs were employees of defendant employer, and defendant "required and obtained the PII as ***part of the employment relationship***." 278 F. Supp. 3d at 750 (emphasis added) (Opp. at 18). Moreover, *In re GE/CBPS Data Breach Litigation* involved mandatory receipt of highly sensitive personal information and a detailed employee data protection policy that formed an implied contract. 2021 WL 3406374, at *2 (Opp. at 18). Finally, in *Wallace v. Health Quest Systems, Inc.*, plaintiffs were paying "customers or patients" of defendant hospital group. 2021 WL 1109727, at *1 (S.D.N.Y. Mar. 23, 2021) (Opp. at 19). None of these facts are present here, where Plaintiffs allege they joined CarePath via their healthcare providers. Mot. at 21.[9] Courts reject implied contract claims even where, as here, plaintiffs allege "sensitive personal information" was required in exchange for services. *See Smahaj*, 131 N.Y.S.3d at 826-27 (dismissing implied contract claim where there were no "facts supporting an inference that [defendant] implicitly promised to keep plaintiff's information safe when it was stored on a third-party business associate's network.").

***Breach of Third-Party Beneficiary Contract***. Plaintiffs separately argue that IBM's receipt of PII from Janssen allows Plaintiffs to invoke the IBM-Janssen contract against IBM as a

---

[8] Plaintiffs also rely on *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374 (E.D. Va. 2020) for their argument, which does not cite any New York case that bases a negligence *per se* claim on the FTC Act.

[9] Contrary to Plaintiffs' assertion, courts frequently dismiss implied contract claims at the pleading stage. *See, e.g.*, *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022); *Shull v. TBTF Prods. Inc.*, 2019 WL 5287923, at *15 (S.D.N.Y. Oct. 4, 2019).

third-party beneficiary. Plaintiffs take issue with Defendants citing a case from the summary judgment stage for a statement of black-letter law. Opp. at 20. But Plaintiffs' out-of-circuit cases (*id.*) do not change the fact that New York law is clear: the "parties' intent to benefit the third party must be apparent from the face of the contract," including at the motion to dismiss stage. *LaSalle Nat. Bank v Ernst & Young LLP*, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2001) (motion to dismiss). Plaintiffs do not plead any such facts and Plaintiffs' reliance on *In re Canon U.S.A. Data Breach Litig.* (Opp. at 20), is misplaced. The court in *Canon* found that the dependents of employees were third-party beneficiaries of an implied employment contract because the dependents' PII also had to be provided to the employer in order to receive dependent benefits. 2022 WL 22248656, at *10 (E.D.N.Y. Mar. 15, 2022). No such facts are alleged here.

***Breach of Fiduciary Duty.*** Plaintiffs have not pled the existence of a fiduciary relationship with Janssen. They argue that a physician-patient duty existed in this case, but they allege no facts showing that Janssen provided "medical services" or "healthcare treatment." *See* Opp. at 20-21. Plaintiffs' cases extending a physician-patient duty to medical data handlers are thus inapt. For example, in *Doe* the New York Court of Appeals extended the physician-patient duty of confidentiality to "health maintenance organizations" only because a New York statute required "health maintenance organizations" to avoid disclosing medical records. *See Doe v. Cmty. Health Plan-Kaiser Corp.*, 268 A.D.2d 183, 186-87 (2000). Janssen is not a health maintenance organization under that statute. *See* N.Y. Pub. Health Law § 4401.

Plaintiffs also cite distinguishable cases wherein the plaintiffs dealt directly with defendants. Opp. at 21-22. In *Jones v. Commerce Bancorp, Inc.*, the court found a commercial bank owed a fiduciary duty of confidentiality to the owner of an account at that bank. 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006). And in *Daly v. Metropolitan Life Insurance Company*,

the court found an insurer owed a fiduciary duty of confidentiality to the purchaser of its life insurance. 782 N.Y.S.2d 530, 532 (N.Y. Sup. Ct. 2004). Here, however, Plaintiffs do not allege direct dealings with, let alone affirmative representations by, Janssen.

The relationship between Plaintiffs and Janssen is too attenuated for a fiduciary duty to attach. Courts routinely reject Plaintiffs' "'guardian of personal information' theory as a basis for imposing a fiduciary duty." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1203 (D. Or. 2016) (collecting cases); *see also Prutsman v. Nonstop Admin. & Ins. Servs., Inc.*, 2023 WL 5257696, at *1 (N.D. Cal. Aug. 16, 2023) (dismissing fiduciary duty claim where "plaintiffs' sole allegation in support of their claim for breach of fiduciary duty is that Defendant became a fiduciary by its undertaking and guardianship of the PHI/PII").[10]

***Unjust Enrichment.*** This claim fails because CarePath was provided to Plaintiffs at no cost—a fact that Plaintiffs do not contest.[11] Mot. at 23-24.

Separately, Plaintiffs speculate that Defendants enriched themselves by saving costs of data security measures (Opp. at 23), but the "benefit must be both specific and direct." *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015). In Plaintiffs' case, the plaintiff alleged she conferred a monetary benefit to defendants by purchasing goods from a website, defendants failed to secure her payment data in exchange for the money she paid, and defendants' proceeds from the sale should be disgorged. *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *12 (S.D.N.Y. May 7, 2019) (Opp. at 23). Plaintiffs allege nothing resembling those facts here.

---

[10] Plaintiffs also argue that, because the "fiduciary duty arises independently of the implied contract," these "claims are not duplicative." Opp. at 22. Plaintiffs ignore Defendants' cases (Mot. at 23) and that the source of the alleged duty is the same: Plaintiffs' provision of data to Janssen. Plaintiffs also argue that "existence of fiduciary duty cannot be resolved on a motion to dismiss" (Opp. at 23), but are contradicted by many courts doing just that. *See, e.g., Zaretsky v. Gemological Inst. of Am., Inc.*, 2014 WL 1678990, at *5-6 (S.D.N.Y. Apr. 28, 2014).

[11] Plaintiffs claim that this fact "is nowhere alleged in the Amended Complaint" (Opp. at 23), but ignore that the CarePath website substantiating it is incorporated by reference. Mot. at 3 n.4.

Plaintiffs also claim that "numerous courts" have allowed unjust enrichment claims to stand under similar circumstances, but cite just one case that is not on point. Opp. at 24 (citing *Wallace*, 2021 WL 1109727, at *11). In *Wallace*, the court allowed an unjust enrichment claim to proceed against a ***hospital operator*** that plaintiffs directly ***paid for its services***. *Wallace*, 2021 WL 1109727, at *11. Plaintiffs do not explain how this resolves the attenuated nature of Plaintiffs' relationship with ***Janssen*** or ***IBM***. Plaintiffs have failed to adequately allege a relationship with IBM or Janssen that is sufficiently close to establish an unjust enrichment claim. *See* Mot. at 24.

***Illinois Statutory Consumer Fraud ("ICFA").*** Plaintiffs' claim fails because ICFA applies only to conduct that occurs at least partially within Illinois. Mot. at 27. Indeed, Plaintiffs' own case recognizes that ICFA claims are limited to "where the relevant transactions primarily and substantially occurred." *Beaton v. SpeedyPC Software*, 666 F. Supp. 3d 724, 734 (N.D. Ill. 2023). Plaintiffs do not address any of the other cases applying this rule, nor their failure to allege that conduct occurred primarily and substantially in Illinois. *See* Mot. at 27.[12]

Plaintiffs also allege that an entirely new Illinois statute provides a basis for their ICFA claim. Opp. at 25 (citing the Illinois Personal Information Protection Act ("IPIPA")). This argument is unavailing. *First*, citing to IPIPA does not cure the deficiencies regarding extraterritoriality. *Second*, courts do not consider "entirely new legal theories and arguments based on factual allegations not raised in the Complaint" at the motion to dismiss stage. *Avila v. Acacia Network*, 2025 WL 2161280, at *8 (S.D.N.Y. Mar. 28, 2025). The Amended Complaint contains an ICFA claim based on alleged "deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts in connection with the sale and advertisement of their

[12] Plaintiffs argue a named Plaintiff "interacted with Defendants' platform over the course of his medical treatment in Illinois, and Defendants solicited and marketed their business within Illinois." Opp. at 24 (citing Am. Compl. ¶¶ 258, 431-32). These allegations are not in the Amended Complaint, which cannot be amended through briefing, and are thus inapposite.

services." Am. Compl. ¶ 433. The Amended Complaint does not reference IPIPA nor contain allegations that would support such a claim in any event.

***California Consumer Privacy Act ("CCPA").*** Plaintiffs do not engage with Defendants' arguments on whether the information at issue here is even covered by CCPA.[13] Plaintiffs still have not pointed to any information they provided to CarePath that qualifies as medical or health insurance information under the statute, and their single case on this point did not involve a CCPA claim. Opp. at 26 (citing *J.M. v. Illuminate Educ., Inc.*, 103 Cal. App. 5th 1125, 1133 (2024)).

*Second*, Plaintiffs argue they sufficiently alleged "particular data security failings." Opp. at 26. But Plaintiffs ignore Defendants' on-point case law (Mot. at 29) and respond with distinguishable cases. For example, *In re Arthur J. Gallagher Data Breach Litigation* and *In re Sequoia Benefits & Insurance Data Breach Litigation* both involved "ransomware attacks" or a "cyber-attack" that allowed third parties to *view* and steal personal information. *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 581 (N.D. Ill. 2022); *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *7 (N.D. Cal. Feb. 22, 2024). These allegations of a confirmed, targeted attack coupled with non-conclusory allegations that personal information was viewed and used do not square with the Notice Letter, which only stated that an unauthorized user *could* get access to CarePath through a "technical method." Mot. at Ex. B.

*Third*, Plaintiffs argue that "enhanced security measures" do not "suffice to cure a violation of the disclosure of medical information" and "cannot rectify the disclosure of information in the first instance." Opp. at 27. But Plaintiffs again do not grapple with the fact that the CCPA "does not require businesses that have experienced a data breach to place consumers in the same position

---

[13] By not addressing these arguments, Plaintiffs appear to concede that: (1) they have no CCPA § 1798.100 claim; and (2) they can only seek statutory damages and injunctive relief under the CCPA. Opp. at 27-28. Even then, statutory damages are not available when Defendants cured. *In re Waste Mgmt.*, 2022 WL 561734, at *6.

they would have been absent a breach." *In re Waste Mgmt.*, 2022 WL 561734, at *7. And here too, Plaintiffs' cases are inapposite. Opp. at 26-27. For example, *In re Progressive Leasing Breach Litigation* addressed the sufficiency of the timing and content of a notice letter, not whether defendants had sufficiently cured a breach. 2025 WL 213744, at *19 (D. Utah Jan. 16, 2025).

***California Confidentiality of Medical Information Act ("CMIA")***. *First*, Plaintiff Rose argues he has alleged "extensive factual allegations supporting that Janssen qualifies as a 'provider of healthcare' under" CMIA. Opp. at 28. *Oddei v. Optum, Inc.* is again instructive. Mot. at 31. There, the district court held that plaintiff could not establish CMIA liability where the complaint only included a conclusory statement that defendant offered "software or hardware" to consumers. 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021). The court rejected plaintiff's argument that requesting records through a website qualified as offering software or hardware. *Id.* In the Amended Complaint, Plaintiffs do not even allege that Defendants offered software or hardware, but only allege that Defendants are "providers of healthcare" as defined by § 56.06 without alleging that Janssen satisfies the two-fold purpose of that definition. Am. Compl. ¶ 454.

*Second*, with respect to the requirement that they allege an affirmative communication, Plaintiffs do not take on *Sutter's* holding that, in the context of data breaches, claims under § 56.10 fail absent allegations that Defendants "intend[ed] to disclose the medical information to the thief." *Sutter Health v. Superior Court of Sacramento County*, 227 Cal. App. 4th 1546, 1556 (2014). While Plaintiffs argue this "is neither a stolen laptop nor hard drive case" (Opp. at 31), they elsewhere argue extensively that the Incident was due to "criminals" targeting Plaintiffs' information. *E.g., id.* at 1. As such, Plaintiffs have failed to plead—and in fact, undermined any allegation—that Defendants "intended" to disclose Plaintiffs' data.

*Finally*, Plaintiffs do not address the fact that, under § 56.101(a), Plaintiff Rose needed to plead what specific ***medical*** information of his was viewed in the Incident. Mot. at 32-33. Instead,

Plaintiffs argue that because the "Notice Letter expressly admits to unauthorized access," they need not plead any further particulars. Opp. at 31-32. But the Notice Letter does not say that the information was *viewed*, let alone whose and what exactly. Mot. at Ex. B. These allegations are insufficient to state a CMIA claim. *See Sutter*, 227 Cal. App. 4th at 1557 ("No breach of confidentiality takes place until an unauthorized person views the medical information.").

***California Unfair Competition Law ("UCL")***. In their Opposition, Plaintiffs do little other than recite black-letter UCL law. *First*, Plaintiffs fail to address several of Defendants' arguments such as the adequate legal remedy that forecloses their equitable relief (Mot. at 33-34), or the fact that Defendants did not have any of Plaintiffs' property or funds to restore. *Id.* at 34-35. *Second*, Plaintiffs argue they have standing because they "allege, among other injuries, loss of the benefit of their bargain, lost time, and diminution in the value of their Personal Information." Opp. at 33.[14] Plaintiffs cite one case, which is relevant only to their purported benefit-of-the-bargain theory. *Id.* (citing *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 527 (2022)). And in that case, plaintiffs alleged they paid "more than they would have had they known the truth that [defendant] had not implemented and would not maintain adequate data security practices." *Moore*, 83 Cal. App. 5th at 527. Plaintiffs have not made—and cannot make—these allegations. Finally, Plaintiffs claim they are entitled to restitution under § 17203. Opp. at 35. But Plaintiffs concede that restitution is "confined to restoration of any interest in money or property." *Id.* (*citing Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1135 (9th Cir. 2014)). CarePath is free to use, and non-restitutionary disgorgement is foreclosed under the UCL. Mot. at 34-35.

**CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

---

[14] Moreover, because Plaintiffs did not address the arguments at Mot. §§ I.B.3 (loss of value) and I.B.5 (benefit-of-the-bargain), those allegations cannot form the basis of a UCL claim.

Dated: September 2, 2025

/s/ *Martin L. Roth*
Martin L. Roth, P.C. (*pro hac vice*)
Keith Holt (*pro hac vice*)
Alexandra Schrader (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200
rothm@kirkland.com
keith.holt@kirkland.com
alexandra.schrader@kirkland.com

Lamina Bowen
Madeleine Xu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900
lamina.bowen@kirkland.com
madeleine.xu@kirkland.com

Devin Anderson (*pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: +1 801 877 8100
Facsimile: +1 801 877 8101
devin.anderson@kirkland.com

*Attorneys for Defendants International Business Machines Corporation and Johnson & Johnson Health Care Systems, Inc.*